**In re the MARRIAGE OF Deborah A. McCORD, Appellee,**

**and**

**David L. McCord, Appellant.**

**No. 94CA2004.**

Colorado Court of Appeals, Div. I.

Dec. 7, 1995.

Stevens, Littman & Biddison, LLC, Craig A. Weinberg, Boulder, for Appellee.

Alfonso S. Cabral, Denver, for Appellant.

Opinion by Judge METZGER.

In this post-dissolution of marriage proceeding, David L. McCord (father) appeals the order modifying his child support obligation and awarding Deborah A. McCord (mother) her attorney fees. We dismiss the appeal in part, affirm the trial court's order, and remand the cause for further proceedings.

The parties' marriage was dissolved in 1988. Custody of their minor child was awarded to mother, and father was ordered to pay $300 per month in child support. At the time of the dissolution, father was employed as a construction worker and was earning approximately $16,400 per year. Mother was earning approximately $14,500 per year as a clerical worker.

In April 1994, father won an annuity worth $2 million in the Colorado State Lottery and received his first installment payment of $50,000.

Mother thereafter filed a motion seeking a modification in child support, alleging that father's increased income constituted a material change in circumstances. She also requested that the magistrate order father to pay his share of the child's unreimbursed medical expenses in the amount of $1,721.02.

After an initial hearing on June 3, 1994, not attended by father or his counsel, the magistrate ordered father to pay $1,452 of the unreimbursed medical expenses. However, because father had not appeared for the hearing, the magistrate did not address mother's request for a modification in child support.

At a hearing on June 24, father and his counsel appeared and presented evidence regarding father's lottery winnings and his decision, upon learning of his good fortune, to quit his job and become "self-employed." Mother testified regarding her employment and financial resources. She also presented evidence regarding the attorney fees she had incurred in seeking a modification of child support.

Based on the evidence presented at the hearing, the magistrate concluded that mother's gross monthly income was $952. The magistrate determined that father was voluntarily unemployed and imputed to him the annual income he had earned before his resignation. The magistrate further found that father's lottery winnings constituted gross income for purposes of calculating child support and that his gross monthly income from his lottery proceeds and employment totalled $5,538. Applying the child support guidelines, § 14–10–115, C.R.S. (1987 Repl.Vol. 6B), the magistrate increased father's child support obligation to $781 per month and, in addition, ordered father to pay $1,300 of mother's attorney fees.

On petition by father, the district court affirmed the magistrate's findings and order.

I.

Father first contends that the magistrate erred in ordering him to pay $1,452 of the uninsured portion of the child's extraordinary medical expenses pursuant to § 14-10-115(12)(a), C.R.S. (1987 Repl.Vol. 6B). We dismiss this portion of the appeal.

The powers of magistrates and appellate review of their decisions are governed by the Colorado Rules for Magistrates (C.R.M.). C.R.M. 6(e)(5) provides that a party to a proceeding conducted by a district court magistrate shall not be entitled to appellate review of any order or judgment entered in that proceeding, unless that party has first filed a timely motion for district court review of the magistrate's order. *See also In re Estate of Burnford,* 746 P.2d 51 (Colo.App. 1987). Such a motion for review must be filed within 15 days of the date of the magistrate's order. C.R.M. 6(e)(2).

Here, the magistrate entered a written order on June 3, 1994, directing father to pay his portion of the child's extraordinary medical expenses "forthwith." Father did not seek district court review of the order within the applicable 15-day period. Nor did father seek review of the June 3 order in his motion for district court review of the magistrate's subsequent order regarding modification of child support. Indeed, at the June 24 hearing father indicated that he had "no problem with paying that debt" and that he would do so immediately.

Under these circumstances, we do not have jurisdiction to consider his claims in this regard. *See* C.R.M. 6(e)(5); *see also In re Estate of Burnford, supra.*

II.

Father next contends that the magistrate erred in modifying his child support obligation because mother failed to show a change of circumstances warranting such a modification. We disagree.

A parent's child support obligation may be modified upon a showing of changed circumstances that are substantial and continuing. Section 14-10-122(1)(a), C.R.S. (1995 Cum. Supp.).

Here, father acknowledges that his financial resources increased dramatically and that his increase in income constitutes a substantial and continuing change in circumstances. He claims, however, that his increased income alone was insufficient to establish changed circumstances justifying a modification and that mother also should have been required to demonstrate an increased economic need on the child's part. We are not persuaded.

If the party requesting modification demonstrates that an increase in the obligor's income would result in at least a 10 percent change in the amount of child support, the child's increased needs are presumed. *See In re Marriage of Larsen,* 805 P.2d 1195 (Colo.App.1991); *In re Marriage of Anderson,* 761 P.2d 293 (Colo.App.1988).

Moreover, nothing in the statute precludes the trial court from ordering a support payment that exceeds the known needs of the child. *In re Marriage of Nimmo,* 891 P.2d 1002, 1007 (Colo.1995) ("The guidelines were not enacted to prevent an increase in a child's standard of living by denying a child the fruits of one parent's good fortune.").

Here, father conceded that mother had demonstrated a substantial change in the parties' financial circumstances and he did not present any evidence rebutting the presumption of need of the child. Accordingly, the magistrate correctly determined that father's increased income constituted a change of circumstances warranting modification of his child support obligation. *See In re Marriage of Larsen, supra.*

III.

We also reject father's contention that the magistrate did not make sufficient factual findings regarding the factors enumerated in § 14-10-115(1), C.R.S. (1987 Repl.Vol. 6B), to support the modification.

The child support guidelines must be applied in "any action to establish or modify child support." Section 14-10-115(3)(a), C.R.S. (1995 Cum.Supp.). The guidelines establish a rebuttable presumption of the appropriate monthly child support obligation

based on the parties' combined adjusted gross income. Sections 14–10–115(4)(a), C.R.S. (1987 Repl.Vol. 6B); 14–10–115(3)(a) and 14–10–115(10)(b), C.R.S. (1995 Cum. Supp.); *see also In re Marriage of Miller,* 790 P.2d 890 (Colo.App.1990).

A court may deviate from the guidelines if application would be inequitable, provided the court makes specific findings regarding the reasons such deviation is warranted. Section 14–10–115(3)(a); *see also In re Marriage of Ford,* 851 P.2d 295 (Colo. App.1993). Contrary to father's assertion, however, the court is not required to make specific findings justifying an amount of child support that does not deviate from the guidelines.

Here, father presented no evidence that deviation from the guidelines was appropriate and, in computing father's modified child support obligation, the magistrate applied the guidelines without deviation. Thus, the magistrate was not required to make specific findings regarding the reasons for the modification or justifying the amount of child support father was ordered to pay.

IV.

Father next contends that the magistrate erred in concluding that he is voluntarily unemployed and in imputing to him the annual income he had earned prior to his resignation. We are not persuaded.

If a parent is voluntarily unemployed or underemployed, child support must be calculated based on the parent's potential income. However, a parent may not be considered voluntarily unemployed if he or she is physically or mentally incapacitated, § 14–10–115(7)(b)(I), C.R.S. (1995 Cum.Supp.). A parent who is employed but is earning less than he or she is capable of earning shall not be deemed underemployed if:

(A) The employment is temporary and is reasonably intended to result in higher income within the foreseeable future; or

(B) The employment is a good faith career choice which is not intended to deprive a child of support and does not unreasonably reduce the support available to a child; or

(C) The parent is enrolled in an educational program which is reasonably intended to result in a degree or certification within a reasonable period of time and which will result in a higher income, so long as the educational program is a good faith career choice which is not intended to deprive the child of support and which does not unreasonably reduce the support available to a child.

Section 14–10–115(7)(b)(III), C.R.S. (1995 Cum.Supp.).

Here, father maintains that he was incapable of performing physical labor and that his decision to resign from his job was a good faith career choice. Accordingly, he maintains that the magistrate erred in imputing to him his potential income from employment.

The record shows that, before winning the lottery, father earned approximately $16,400 per year as a construction worker. Father testified that he injured his back in January 1992 and that the injury affected his ability to work in a physically demanding job. He indicated that, although he continued to work as a construction laborer for over a year after he was injured, he quit his job immediately upon winning the lottery because his back injury made it too difficult for him to work. He did not present any evidence, however, to support his assertion that he was physically incapable of working.

With respect to his current employment, father testified that he was "self-employed" and that this "employment" consisted of investing his winnings and "trying to figure out what type of business I want to be in."

This evidence amply supports the magistrate's determination that father quit his job because he won the lottery, that he was physically capable of working but was voluntarily unemployed, and that his decision to resign from his job was not a good faith career choice. Thus, the magistrate did not err in imputing to father the annual income he had earned prior to his resignation.

We reject father's contention that as long as his lottery winnings provide him with the same or more income than he earned when he was employed, the court may not impute

to him the annual income he earned before quitting his job and that a gross income figure that combines his imputed income and his lottery winnings is excessive.

The statute provides that income may come "from any source," and the definition of "gross income" expressly includes gifts and prizes. Section 14–10–115(7)(a)(I)(A), C.R.S. (1995 Cum.Supp.). In our view, lottery winnings constitute gifts or prizes within the meaning of the statute and are therefore includable as gross income.

Moreover, while the statute may not specifically include lottery winnings within the definition of income, its broad language satisfies us that the General Assembly intended to include lottery winnings as income for purposes of calculating a parent's child support obligation. *See In re Marriage of Nimmo, supra; see also Pratt v. McCullough,* 100 Ohio App.3d 479, 654 N.E.2d 372 (1995); *County of Contra Costa v. Lemon,* 205 Cal. App.3d 683, 252 Cal.Rptr. 455 (1988).

Thus, there was no abuse of discretion in the conclusion that father's potential income from employment as well as his lottery winnings are includable as income for purposes of calculating child support, even though his gross income after winning the lottery exceeds the income he earned when he was employed. *See In re Marriage of Nimmo, supra; In re Marriage of Armstrong,* 831 P.2d 501 (Colo.App.1992).

V.

Father also complains that the magistrate erred in not imputing additional income to mother. We perceive no error.

The record indicates that in April 1994, mother was terminated from a job at which she had earned approximately $1,600 per month. She testified that she was entitled to receive unemployment benefits of $1,026 per month until the beginning of July 1994. However, mother only collected unemployment benefits until June 27, 1994, when she accepted a clerical job for a travel agency, earning approximately $952 per month. Mother testified that she had been trained to work in a travel agency and that, based in part on this training, she expected to receive substantial wage increases within six months to a year.

This evidence provides ample support for the magistrate's conclusion that mother's decision to accept the travel agency job, rather than to collect unemployment benefits until she found a higher paying job, was a good faith career choice and that she was therefore not voluntarily underemployed within the meaning of the statute. *See* § 14–10–115(7)(b)(III)(B), C.R.S. (1995 Cum.Supp.). Thus, the magistrate did not err in determining that mother's monthly income was $952 and in refusing to impute additional income to her.

VI.

We also reject father's final contention that the magistrate erred in ordering him to pay mother's reasonable attorney fees.

Section 14–10–119, C.R.S. (1987 Repl.Vol. 6B) authorizes the trial court to award a party to a dissolution action a reasonable amount for attorney fees and costs. The award of fees is designed to equalize the status of the parties and to enable the court to ensure that neither party is forced to suffer unduly as a consequence of the proceedings. *In re Marriage of Aldinger,* 813 P.2d 836 (Colo.App.1991).

The trial court has wide discretion in awarding attorney fees, *In re Marriage of Oberg,* 900 P.2d 1267 (Colo.App. 1994), and its ruling will not be disturbed absent an abuse of that discretion. *In re Marriage of Connell,* 831 P.2d 913 (Colo.App. 1992); *In re Marriage of Fernstrum,* 820 P.2d 1149 (Colo.App.1991).

Here, there is substantial support in the record for the magistrate's determination that the services provided by mother's attorney were not unnecessary and that counsel's fees were reasonable. Thus, in light of the vast disparity in the parties' financial resources, we find no error in the award. *See In re Marriage of Connell, supra.*

VII.

We do not find that this appeal is frivolous and, therefore, deny mother's request for an award of costs and attorney fees under C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993). However, insofar as mother requests attorney fees for this appeal pursuant to § 14-10-119, such application properly is made to the trial court. *See In re Marriage of Meisner,* 715 P.2d 1273 (Colo.App.1985).

The portion of the appeal challenging the award of extraordinary medical expenses is dismissed. The order entered following the hearing on June 24, 1994, is affirmed and the cause is remanded for the trial court's consideration of an award of attorney fees to mother for this appeal.

CRISWELL and ROTHENBERG, JJ., concur.