In re the MARRIAGE OF Janet
A. BREGAR, Appellee,

and

Conrad T. Swanson, Appellant.

No. 96CA0780.

Colorado Court of Appeals,
Div. II.

July 10, 1997.

Rehearing Denied Aug. 28, 1997.

Certiorari Denied Feb. 23, 1998.

Cox, Mustain–Wood, Walker & Schumacher, LLC, Timothy B. Walker, Littleton, for Appellee.

Conrad T. Swanson, Pro Se.

Day & Sackheim, Daryl K. James, Boulder, for Appellant (on the briefs).

Christine A. Coates, Boulder, Guardian–Ad–Litem.

Opinion by Judge TAUBMAN.

Conrad T. Swanson (husband) appeals from an order of the trial court increasing his child support obligation and ordering him to pay attorney fees to Janet A. Bregar (wife). We affirm in part, reverse in part, and remand for further proceedings.

As part of the decree of dissolution entered in 1989, husband agreed to pay child support in the amount of $800 per month and was awarded the tax exemptions for both children. In January 1995, wife moved for an increase in child support and husband responded that there should be a decrease.

In 1992, husband, an attorney, was fired from the law firm in which he had been working at the time of the dissolution. He had been earning $4,250 per month there. He then earned approximately $27,000 from a solo practice in 1993. At the time of the hearing in this matter, he had been employed with a law firm since January 1994 but testified that he had not earned any money and was indebted to the firm for over $10,000. He testified that he did not foresee any income from his work as a lawyer because he had been unsuccessful in obtaining alternative legal employment.

Husband also testified that he had started a cattle ranch in April 1994 because he had wanted to raise cattle since childhood. However, he testified that he had not earned any

money from this financially unsuccessful endeavor.

Additionally, husband received proceeds from the sale of stock between 1993 and 1995 totaling over $320,000, almost all of which was taxed as a capital gain.

Husband's capital gains resulted from the sale of shares of stock he had received as part of the permanent orders. Because the basis of those shares of stock was negligible, the parties recognized at the time of permanent orders that nearly all the proceeds from any later sale of this stock would be taxed as capital gains. Consequently, as part of permanent orders, husband was awarded additional shares of stock equal to 16.5% of the marital debt so that the parties would share equally in the anticipated tax burden when husband sold the shares of stock to pay the marital debt.

After a two-day evidentiary hearing, the magistrate determined that husband was voluntarily underemployed and, in addition to his undisputed monthly income of $1,309, imputed to him $4,250 per month as potential earnings as a lawyer and $1,500 per month as a reasonable return on the total proceeds from the sale of stock. Child support was significantly increased. In addition, wife was awarded $11,000 in attorney fees. On review, the trial court made minor corrections and, otherwise, affirmed.

Initially, we note that although wife argued before the trial court that the entire amount of husband's proceeds from the sale of stock should be characterized as income based on § 14–10–115(7)(a)(I)(A), C.R.S. (1996 Cum. Supp.), the trial court ruled otherwise, and she has not appealed from that ruling.

## I.

Husband first contends that the trial court erred in determining that he was voluntarily underemployed. We disagree.

■ The trial court is authorized under §§ 14–10–115(7)(a) and 14–10–115(7)(b)(I), C.R.S. (1996 Cum.Supp.) to calculate child support based upon a determination of a parent's potential income if the parent is "voluntarily unemployed or underemployed."

*In re Marriage of Jaeger,* 883 P.2d 577 (Colo. App.1994).

■ Factual findings of the trial court will not be disturbed on appeal unless clearly erroneous and not supported by the record. *In re Marriage of Udis,* 780 P.2d 499 (Colo. 1989). Further, the determination of the credibility of witnesses and the weight, probative force, and sufficiency of the evidence and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

## A.

■ Husband argues that there cannot be a finding of voluntary underemployment because alternative employment was not available to him. We disagree.

■ Parents share an obligation to support their children to the best of their abilities, and the court may interpret one parent's lack of initiative in finding or keeping work as a voluntary refusal to fulfill a support obligation. *In re Marriage of Nordahl,* 834 P.2d 838 (Colo.App.1992). The trial court may consider whether alternative employment is available in determining whether a party is voluntarily unemployed or underemployed. *See In re Marriage of Campbell,* 905 P.2d 19 (Colo.App.1995). Further, § 14–10–115(7)(b)(I) merely requires the court to determine potential income, and imposes no burden on one parent to prove that an available job exists for the other parent.

We reject father's argument that *In re Marriage of Campbell, supra,* required wife to prove that a *particular* job is available. *See In re Marriage of Mackey,* 940 P.2d 1112 (Colo.App.1997).

Here, in concluding that husband was voluntarily underemployed, the magistrate implicitly determined that husband's efforts in starting a cattle raising operation were not reasonable. *See In re Marriage of Foottit, supra.* Further, the magistrate implicitly determined that husband's testimony concerning his efforts to obtain legal employment was not credible. Finally, although wife did not present evidence of the existence of available jobs, the evidence and reasonable

inferences from it support the magistrate's determination that husband was voluntarily underemployed, and thus, the trial court did not abuse its discretion in affirming the magistrate's order.

### B.

■ Husband also argues that since his employment as a cattle rancher was a good faith career choice, was not intended to reduce the support available to his children, and did not unreasonably reduce support, he fits within the exceptions set forth in § 14–10–115(7)(b)(III)(B), C.R.S. (1996 Cum. Supp.). We disagree.

■ The trial court as a finder of fact can believe all, part, or none of a witness' testimony, even if it is uncontroverted. *In re Marriage of Bowles,* 916 P.2d 615 (Colo.App. 1995). Therefore, it was within the trial court's prerogative to determine that husband did not fall within any one of the exceptions of § 14–10–15(7)(b)(III)(B). *See In re Marriage of McCord,* 910 P.2d 85 (Colo.App. 1995) (trial court determined husband's resignation from prior job after winning the lottery was not a good faith career choice and imputed amount of income to him that he had earned prior to his resignation).

### C.

■ Husband also argues that the trial court's imputation of $4,250 monthly income from potential earnings as a lawyer is without any support in the record. We disagree.

■ The trial court may rely upon evidence of a party's historical income in determining the proper amount of income to impute for child support purposes. *In re Marriage of Hannum,* 796 P.2d 57 (Colo. App.1990). Therefore, the magistrate here acted within his discretion when he imputed to husband the amount husband had been earning before he lost his law firm position in 1992, and the trial court properly affirmed that determination.

### II.

Husband also asserts that the trial court erred in imputing investment income to him from the proceeds from the sale of stock he had received in 1993, 1994, and 1995. We agree in part and remand the cause for further proceedings.

Husband contends that, although income for purposes of calculating child support may include imputed investment income from an asset, his sales proceeds no longer exist as an asset and thus cannot generate any income. Additionally, husband asserts that, at a minimum, the trial court erred in not reducing his sales proceeds by the amounts he paid for taxes on his capital gains and for margin debt when calculating his imputed income. He does not assert that the trial court could not impute income from an asset he had received in permanent orders, or from the proceeds thereof.

We conclude that the trial court properly imputed investment income by considering husband's sales proceeds as an asset. We affirm the trial court with respect to its determination not to deduct husband's payment of margin debt in valuing the sales proceeds as an asset. However, we conclude that the trial court erred in not deducting from the amount of the proceeds from the sale of stock the amount of capital gains taxes husband actually paid on the receipt of these proceeds.

No statutory provision addresses how to determine the amount of income an asset may be expected to generate nor does any statutory provision authorize such an imputation. However, for purposes of imputing investment income from an asset, divisions of this court have held that "gross income" includes only the amount of income that the asset reasonably can be expected to generate. *In re Marriage of Laughlin,* 932 P.2d 858 (Colo.App.1997); *In re Marriage of Armstrong,* 831 P.2d 501 (Colo.App.1992).

Here, rather than imputing the proceeds from the sale of stock themselves as income to husband, the magistrate considered them as an asset and imputed to husband the reasonable income from that asset. Specifically, the magistrate found that husband's capital gains from 1993 to 1995 exceeded $349,000, subtracted capital gains taxes of 33%, and, without stating what income per-

centage he used, imputed $1,500 monthly income to husband.

The district court altered the magistrate's factual findings to reflect gross capital gains of $322,000. It also determined that the magistrate had erred in subtracting capital gain taxes before imputing income to husband. However, the trial court ultimately determined that the magistrate's imputation of $1,500 interest income per month was not erroneous because, if taxes were not deducted from the $322,000 gain, the rate of return would be only 5.75% per year.

On appeal, the district court's calculation of $322,000 in capital gains is not disputed. The record reveals that husband paid approximately $40,000 in federal capital gains taxes in 1994 and $37,000 in 1995. However, although husband testified that he had paid federal capital gains taxes in 1993 and state taxes on his capital gains in 1993, 1994, and 1995, the record does not reveal the amounts of such payments.

After the dissolution became final, husband incurred additional margin debt to finance his ranching operation, to pay for living expenses, and to pay child support and maintenance. At various times, to reduce his margin debt, husband sold shares of his stock, which generated the capital gains at issue here.

■ Initially, we agree with the trial court that, under the circumstances presented here, it was appropriate to consider husband's sales proceeds as an asset which could reasonably be expected to generate income, even though some portion of his sales proceeds had been consumed prior to the support determination. See In re Marriage of Laughlin, supra.

■ Next, we conclude that, in determining the amount of income which the sales proceeds could reasonably be expected to generate, the district court erred in failing to deduct the payment of capital gains taxes. In particular, the court should have calculated the reasonably expected income from each year's sales proceeds from the time husband received them until he actually paid taxes on his capital gains. It then should have calculated the reasonably expected income on the amounts remaining after the date of each tax payment.

This conclusion is supported by In re Marriage of Armstrong, supra. In that case, husband used an inheritance to reduce his monthly debts and increase his disposable income. A division of this court held that the inheritance was an asset which could generate income and, accordingly, considered it in determining a monthly imputed income for calculating child support. However, amounts required to be paid out by him as a condition to his receipt of the inheritance were deducted from husband's inheritance for purposes of computing the amount of interest income his inheritance reasonably could be expected to generate.

The same reasoning applies to taxes required to be paid when capital gains are realized because the amounts paid as taxes cannot reasonably be expected to generate any income.

■ We reject husband's contention that the amounts he paid to reduce his margin debt should similarly be deducted from the amount of his sales proceeds because such margin debt payments were mandatory. Husband did not incur margin debt in order to purchase additional shares of stock and, in turn, generate additional capital gains. Rather, as noted, he incurred additional margin debt after the dissolution in order to obtain funds for his ranching operation, for living expenses, and to pay child support and maintenance. Thus, the amount of sales proceeds husband used to pay margin debt was a discretionary expense and was correctly included in determining his imputed income. See In re Marriage of Armstrong, supra.

Accordingly, the cause must be remanded to the district court for recalculation of husband's imputed investment income from his sales proceeds, taking into consideration the taxes actually paid by him on such proceeds. On remand, the trial court should determine a reasonable rate of return to calculate the imputed income from husband's sales proceeds reduced by the amount of taxes actually paid on his receipt of those proceeds. See In re Marriage of Armstrong, supra.

### III.

■ Husband also asserts that, because the evidence did not establish that his finan-

cial circumstances were better than wife's, the trial court abused its discretion in ordering that he pay $11,000 in attorney fees, approximately half of the amount requested by wife. We disagree.

Under § 14-10-119, C.R.S. (1987 Repl.Vol. 6B), the trial court has broad discretion in awarding attorney fees after considering the financial resources of the parties. *In re Marriage of Oberg*, 900 P.2d 1267 (Colo.App.1994). Attorney fees are to be awarded primarily to equalize the financial positions of the parties. *In re Marriage of Trout*, 897 P.2d 838 (Colo.App.1994).

Here, the record supports the magistrate's determination that husband's income was approximately twice that of wife's, that his financial resources were vastly larger than wife's, and that this was a highly contested case. Thus, we agree with the trial court that the magistrate's award of fees did not constitute an abuse of discretion.

The portion of the order awarding attorney fees is affirmed. The portion of the order modifying child support is reversed, and the cause is remanded for further proceedings consistent with this opinion.

CRISWELL and MARQUEZ, JJ., concur.