**In re the MARRIAGE OF Christine Joy ZISCH, Appellant,**

**and**

**Robert Bradley Zisch, Appellee.**

**No. 97CA1138.**

Colorado Court of Appeals, Div. V.

Sept. 17, 1998.

Inman, Flynn & Biesterfeld, P.C., Richard P. Brentlinger, Robert J. Thomas, Denver, for Appellant.

King, Peterson, Brown, LLC, Charles E. King, Michael S. Deen, Englewood, for Appellee.

Opinion by Judge VOGT.

In this post-dissolution action, Christine Joy Zisch (mother) appeals from a trial court order modifying the child support obligation of Robert Bradley Zisch (father) and declining to require father to pay mother's attorney fees. We affirm in part, reverse in part, and remand with directions.

The parties' marriage was dissolved in 1996. Father was ordered to pay $1675 per month for support of the two minor children. This figure was comprised of $1036 in extraordinary medical and education expenses and $639 from the child support guidelines.

In October 1996, father filed a motion for modification of child support, alleging that mother had presented inaccurate information regarding education and medical expenses at the time of permanent orders. Mother at first simply opposed the motion, but later sought to increase child support based upon father's receipt of a capital gain of approximately $262,000 from the sale of stock in November 1996.

In a written order entered after two hearings, the magistrate treated the $262,000 capital gain as income spread evenly over father's projected lifetime, which resulted in additional income to father of $582.74 per month. Because the parties did not present testimony regarding an amount of interest father could reasonably expect to earn on the capital gain, and because father was not actually earning interest on the gain at the time of the hearing, the magistrate declined to impute any interest income to father.

The magistrate found that mother was voluntarily underemployed, and that income would continue to be imputed to her at the rate set at the permanent orders hearing. The magistrate also approved an agreement between the parties to begin treating extraordinary expenses separately from the child support figure. This resulted in a new child support amount of $635 per month. Finally, the magistrate declined mother's request that father pay her attorney fees under § 14–10–119, C.R.S.1998.

Mother filed a motion for review, and the trial court affirmed the magistrate's order in its entirety.

I.

Mother first contends that the manner in which the trial court treated father's capital gain for child support purposes constituted an abuse of discretion. We agree.

The basic child support obligation is determined by applying the statutory schedule set forth in § 14–10–115(10)(b), C.R.S.1998, to the combined gross incomes of the parents. See § 14–10–115(10)(a), C.R.S.1998. Gross income, as defined by § 14–10–115(7)(a)(I)(A), C.R.S.1998, specifically includes income from capital gains.

It was thus correct for the magistrate in this case to consider the capital gain in calculating father's income for child support purposes. We conclude, however, that the statutory scheme contemplates a different approach from that taken by the magistrate to account for the capital gain.

We acknowledge the lack of clear guidance on this issue. The child support statutes do not directly address the issue, and our cases on child support have approved a variety of approaches to the problem of accounting for a receipt of money from other than a regularly-recurring source such as wages. *Compare In re Marriage of Bregar*, 952 P.2d 783 (Colo.App.1997) (in determining amount of income which stock sale proceeds could reasonably be expected to generate, court should calculate reasonably expected income from each year's sales proceeds from time of

receipt of proceeds until time capital gains taxes are paid, then calculate reasonably expected income on remaining amounts after date of tax payment) *with In re Marriage of Laughlin,* 932 P.2d 858 (Colo.App.1997) (no error in attributing income of $1,200 per month to father based on $200,000 capital gain which had been spent prior to support determination); *In re Marriage of Campbell,* 905 P.2d 19 (Colo.App.1995) (father's gross income was to be recalculated to include proceeds from the actual exercise of his stock options as those options vested); *and In re Marriage of Armstrong,* 831 P.2d 501 (Colo. App.1992) (including as income the amount that father's one-time postdecree inheritance could be expected to generate per month).

■ We conclude that when a court presented with a motion to modify child support must determine how to treat a capital gain received by the obligor after entry of the original child support order, the court should initially include the amount of the gain as a component of the recipient's gross income for the year in which the gain was received. *See* § 14–10–115(7)(a), C.R.S.1998; *In re Marriage of Campbell, supra.* This may warrant a modification in child support in accordance with § 14–10–122(1), C.R.S.1998. *See In re Marriage of Pugliese,* 761 P.2d 277 (Colo. App.1988)(there is a rebuttable presumption that a modification of child support must be granted whenever application of the child support guidelines would result in more than a ten percent change in the amount of support due).

■ If a modification is warranted based on the inclusion of the gain as income, the court then has authority to deviate from the child support guidelines if their application would be inequitable, unjust, or inappropriate. *See* § 14–10–115(3)(a), C.R.S.1998. Under § 14–10–115(3)(a), any deviation is to be accompanied by findings specifying the reasons for the deviation and the presumed amount under the guidelines without a deviation.

■ In addition, under § 14–10–115, the financial resources of the parties are to be considered in determining child support. Even after the year in which a capital gain is counted as income, it may still constitute an asset of the obligor, and may still amount to a "substantial and continuing changed circumstance" within the meaning of § 14–10–122(1)(a). In that event, the amount of income such asset can reasonably be expected to generate may properly be included as income to the obligor for child support purposes. See *In re Marriage of Bregar, supra.*

■ This approach gives effect to § 14–10–115(7)(a)(I)(A), which defines income for a fully employed parent as "actual gross income," and which does not on its face permit spreading out such income over the recipient's lifetime, as was done in this case. At the same time, it permits a trial court, when appropriate, to fashion a fair support order by using the authority given to it under the statute. Further, by requiring findings in accordance with § 14–10–115(3)(a), it helps avoid arbitrary determinations and facilitates subsequent review of the bases for the order.

■ Therefore, on remand here, the trial court should initially include as part of father's 1996 income the full amount of the capital gain he received. See *In re Marriage of Bregar, supra.* The court may then determine whether a deviation from the child support guidelines is appropriate. In addition, in determining the monthly support obligation for the period after the year in which the gain was received, the court should impute as income to father a rate of return that the net capital gain after taxes can reasonably be expected to generate. See *In re Marriage of Bregar, supra* ; *In re Marriage of Laughlin, supra.*

## II.

Mother next contends that the trial court erred in determining that she was voluntarily underemployed. We disagree.

The trial court is authorized under §§ 14–10–115(7)(a) and 14–10–115(7)(b)(I), C.R.S. 1998, to calculate child support based upon a determination of a parent's potential income if the parent is "voluntarily unemployed or underemployed." *In re Marriage of Jaeger,* 883 P.2d 577 (Colo.App.1994).

■ Whether a parent is voluntarily underemployed is typically a question of fact. *See In re Marriage of Bregar, supra.* Factual findings of the trial court will not be disturbed on appeal unless clearly erroneous and not supported by the record. *In re Marriage of Udis,* 780 P.2d 499 (Colo.1989). The determination of the credibility of witnesses and the weight, probative force, and sufficiency of the evidence and the inferences and conclusions to be drawn therefrom are matters within the sole discretion of the trial court. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

Here, at the permanent orders hearing, the trial court had imputed to mother a monthly income of $1,666, noting that although she was unemployed, she had both a bachelor's and a master's degree and could, with little additional education, be re-certified for teaching. At the time of the later hearings, mother requested that only her actual income, not any imputed income, be considered, as she was still not employed full time as a teacher. The magistrate found that mother had missed 15 to 20 days of work as a substitute teacher preparing for the two hearings in this case, and concluded that these days off "adversely affect[ed] her ability to be more fully employed and her future employability" and were "an indication of voluntary underemployment."

■ Mother argues that the uncontradicted evidence established that she had obtained her teaching certificate and was actively seeking a full-time teaching position. However, the trial court as a finder of fact can believe all, part, or none of a witness's testimony even if it is uncontroverted. *See In re Marriage of Bregar, supra.* Here, the magistrate apparently rejected mother's testimony when she concluded that mother was "still voluntarily underemployed despite her testimony that she is trying to obtain full-time employment."

■ We conclude that the magistrate's findings as to mother's voluntary underemployment were not clearly erroneous. Consequently, the trial court did not err in declining to alter those findings. *See In re Marriage of Bregar, supra;* C.R.M. 6(e)(4). We do note, however, that if mother's employment circumstances have changed at the time of remand, the trial court may take this into account in determining the amount of child support for the period after the change in mother's employment circumstances. *See People v. Roybal,* 672 P.2d 1003 (Colo.1983) (prior trial court rulings are not binding if no longer sound because of changed conditions).

## III.

Mother next contends that the trial court abused its discretion in allowing father to withdraw an earlier stipulation concerning his level of income. We do not agree.

■ Relief from a stipulation may be granted in order to prevent manifest injustice. If there is a sound reason in law or equity for repudiating a stipulation, a party is entitled to be relieved from its requirements upon timely application. Whether to set aside a stipulation rests with the sound discretion of the trial court. *Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co.,* 698 P.2d 1340 (Colo.1985).

■ Here, at the time of permanent orders, father stipulated to a much higher amount of monthly income than he was actually receiving because most of his actual income was not taxed. At the hearing on modification, the magistrate recognized that imputation to father of income in excess of what he actually received was improper under *In re Marriage of Fain,* 794 P.2d 1086 (Colo.App.1990), and permitted father to withdraw the stipulation on that basis.

We do not agree with mother that the trial court was precluded from setting aside the stipulation because father had constructive knowledge of *Fain* at the time he entered into it. The stipulation was based on an income determination that was contrary to law; and at the time father moved to set it aside, there had not been reliance on the stipulation that would preclude relieving father from its effects. *See Lake Meredith Reservoir Co. v. Amity Mutual Irrigation Co., supra.*

We thus perceive no abuse of discretion in allowing father relief from the stipulation. On remand, however, the fact that a majority

of father's income is not taxed could be a factor supporting deviation from the guidelines.

## IV.

Finally, mother contends that the trial court abused its discretion in declining to require father to pay her attorney fees under § 14–10–119, C.R.S.1998. We remand for reconsideration of this issue.

The purpose of an award of attorney fees under § 14–10–119 is to apportion the costs of dissolution equitably based on the current financial resources of the parties. *In re Marriage of LeBlanc,* 944 P.2d 686 (Colo. App.1997).

■ Initially, we note that the magistrate did not make any findings of fact in support of the denial of a fee award. Because we have no basis on which to review the attorney fee ruling, the matter must be remanded for entry of findings regarding a fee award for proceedings leading up to the issuance of the order that is the subject of this appeal. *See In re Marriage of Pilcher,* 628 P.2d 126 (Colo.App.1980). Moreover, because the proceedings on remand may well involve a redetermination of the parties' respective incomes, the request for attorney fees under § 14–10–119 should be reconsidered for this reason as well. *See In re Marriage of Simon,* 856 P.2d 47 (Colo.App.1993).

The portion of the order relieving father of the prior stipulation is affirmed. The portion of the order finding mother to be voluntarily underemployed is affirmed, but may be reconsidered on remand upon a showing of changed circumstances. The remaining portion of the order is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

ROTHENBERG, J., concurs.

TAUBMAN, J., specially concurs.

Judge TAUBMAN specially concurring.

Although I agree with the majority's conclusion that the trial court abused its discretion in treating father's capital gain as income for purposes of determining child support modification, I write separately to express a somewhat different analytical approach to this issue. Specifically, I conclude that: (1) under § 14–10–115, C.R.S. 1998, a capital gain may be considered as income only in the month in which it was received, and not for one year, as the majority indicates, and (2) that after the month of receipt, the capital gain should be considered as a financial resource of father, both as to the principal itself and as to interest income which that principal may reasonably be expected to generate. Finally, because of the uncertainty as to how to treat one-time lump sum receipts of income, such as capital gains, under § 14–10–115, I further conclude that this issue deserves further attention from the Colorado Child Support Commission and the General Assembly.

## I. Capital Gains as Income

I begin with the premise that under § 14–10–115(7)(a)(I)(A), C.R.S.1998, capital gains are included within the definition of "gross income" for application of the child support guidelines. Thus, mother here correctly contends that the capital gain itself must be treated as income, and not just the interest that might reasonably be expected to result from that capital gain. *See, e.g., In re Marriage of Bregar,* 952 P.2d 783 (Colo.App.1997) (capital gains from stock sale not considered as income to husband; rather, capital gain considered as asset, and reasonable interest income generated from that asset considered income for purposes of modifying child support).

Once a capital gain is considered as income, the next question is over what period should such income extend.

Here, as the majority notes, the magistrate and trial court treated father's $262,000 capital gain as income spread evenly over father's projected lifetime. On appeal, mother suggests as one alternative that the $262,000 capital gain be spread over a period which would be begin with the filing of the motion to modify child support and which would end when the parties' younger child reaches the age of majority. A third approach, taken by the majority, is that the capital gain should

be considered initially as a component of the recipient's gross income for the year in which the gain was received. It appears that the majority intends that the capital gain be considered in the calendar year in which it was received.

Although each of these approaches has some appeal, none of them is grounded in the express language of § 14–10–115. Spreading a capital gain over the lifetime of its recipient ensures a custodial parent a long-term benefit of increased income for purposes of child support computation. However, much of the period of that imputed income will occur during the noncustodial parent's lifetime, but after the children have reached the age of majority.

Spreading the receipt of a capital gain over a period which terminates when the children reach the age of majority avoids this problem, but may lead to arbitrary and irrational results. Thus, for example, if a noncustodial parent receives a large onetime capital gain when his younger child is 16, that capital gain would be spread over a relatively short period, whereas a noncustodial parent with very young children who receives a capital gain will have that capital gain imputed as income over an extended period of time.

Further, there is no basis in the statute for spreading income over the expected lifetime of the noncustodial parent or over a period which ends when the younger or youngest child reaches the age of majority.

Finally, while there may be some basis in the statute for considering a capital gain to be income in the year it was received, *see* § 14–10–115(7)(c), C.R.S.1998 (tax returns may provide verification of earnings over a longer period), the one year approach is also problematic. If a capital gain is considered as income in the calendar year in which it was received, the actual period that it would be considered for purposes of modifying child support will vary depending upon the month in which the capital gain was received.

This is so for two reasons. When, as here, a capital gain is received in November, the amount of the capital gain would be considered as income at most for the months of November and December. In contrast, when a capital gain is received early in the year, it could be considered as income for most or all of the year.

Second, under § 14–10–122(1)(a), C.R.S. 1998, child support may be modified only as to installments accruing subsequent to the filing of a motion for modification. Thus, in most cases, a custodial parent will not learn of the receipt of a capital gain by the noncustodial parent until some time after it has occurred. What analysis applies, then, when a capital gain is received in November, but a motion to modify child support is not filed until February of the filing year? In such case, under the majority's analysis, the capital gain would be considered as income only in the year in which it was received, but could not be considered as income for the following year, when the motion to modify child support was actually filed.

Here, in contrast, because of the fortuity of the husband filing a motion to *reduce* child support the month before he received his capital gain, we have considered that the trial court had authority to consider the capital gain as income as of the date husband originally filed his motion.

As can be seen from the above, practical and analytical problems result from considering a capital gain as income over an extended period of time. Accordingly, in the absence of legislative guidance, I conclude that the best approach is to consider the capital gain as income only in the month in which it was received, and thereafter as a financial resource. *See* § 14–10–115(10)(a)(II), C.R.S. 1998 (combined gross income determined by monthly adjusted gross income of parents).

This approach is consistent with the statute, because it considers the capital gain as income, and not just a resource. Further, this approach is fair because it would consider the one-time receipt of a capital gain to be considered the same in all cases, particularly when, as discussed below, the amount of the capital gain would be considered in subsequent months as a financial resource.

II. Capital Gain as Financial Resource

My second premise is that when a large one-time capital gain has been received by a

noncustodial parent, such receipt constitutes a "substantial and continuing changed circumstance" pursuant to § 14–10–122(1)(a), C.R.S.1998. In such circumstance, even though the capital gain is a one-time occurrence, its receipt constitutes new wealth to the noncustodial parent which will constitute a "substantial and continuing changed circumstance." As such, it may be considered as a basis for deviating from the child support guidelines under § 14–10–115(3)(a), C.R.S.1998 (deviation from the child support guidelines is permissible on any basis if their application would be inequitable, unjust, or inappropriate).

Thus, in my view, beginning with the month after receipt of the capital gain, that capital gain may be considered as an asset in two respects. First, it may be considered as an asset which will produce a reasonable amount of income which may be considered for the purposes of child support. *See In re Marriage of Bregar, supra; In re Marriage of Armstrong*, 831 P.2d 501 (Colo.App.1992). Second, the principal itself may be considered as a financial resource which will enable the noncustodial parent to pay a higher level of child support.

Here, for example, the trial court could reasonably conclude that apart from any interest income which father's capital gain could reasonably be expected to generate, the $262,000 capital gain (which would increase by the accumulation of interest) could be considered as a basis for increasing father's child support.

This is particularly true in the context of a motion to modify child support, as opposed to an initial determination of child support. This is so because an initial determination of child support usually occurs when there is a division of property, and at such time the court is required to ensure that each spouse receives an equitable share of property. However, in a post-dissolution context, when one party receives a large, one-time income, such income really constitutes new wealth which may afford an equitable basis for deviating from the child support guidelines so as to increase monthly child support.

III.  Need to Consider New Legislation

As noted above, capital gain is considered as income under § 14–10–115(7)(a)(I)(A). That statutory provision also includes within the definition of gross income various other sources of one-time income, such as monetary gifts and certain lottery winnings. Because the statutory scheme does not clearly address how large one-time receipts of income should be considered for purposes of child support modification and particularly whether they should be treated as income, assets, or both, both domestic relations practitioners and trial court judges would be well served if the Colorado Child Support Commission and the General Assembly were to consider how best to address these issue. *See* § 14–10–115(18)(a), C.R.S.1998 (child support commission to review and recommend changes to child support guidelines); CAR 35(f).

In sum, I agree with the majority that the cause must be remanded for reconsideration of father's capital gain as income for child support purposes. I would consider such capital gain as income only in the month it was received, and thereafter as an asset which may be considered for the purpose of deviation from the child support guidelines. In all other respects, I agree with the majority's opinion.