In re the MARRIAGE OF Barbara BOHN, Appellee,

and

Daniel Bohn, Appellant.

No. 98CA1859.

Colorado Court of Appeals, Div. III.

Feb. 3, 2000.

Rehearing Denied April 6, 2000.

Certiorari Denied Sept. 11, 2000.

Opinion by Judge JONES.

In this post-dissolution of marriage proceeding, Daniel Bohn (father) appeals the order increasing his child support obligation to Barbara Bohn (mother) and awarding her attorney fees. We affirm.

When their marriage was dissolved in 1996, the father was ordered to pay the mother $352 per month for the support of their daughter. This amount was based on monthly gross incomes of $1,982 for the mother, and $2,472 for the father.

Two years later, the father won a prize of $1.2 million gross from the Colorado State Lottery. Once the required taxes were withheld, the net amount the father received in 1998 was $816,000, since he chose the cash option rather than an annuity. After reading in the newspaper of the father's good fortune, the mother filed a motion to modify child support.

The trial court determined that the entire $1.2 million was gross income for the 1998 calendar year, and, therefore, that the father's monthly gross income for 1998 was $104,743.17. After considering the taxes the father would pay for 1998 income, the needs of the daughter, and the benefits she would have received had the marriage not been dissolved, the trial court ordered father to pay child support in the amount of $4,208 per month during 1998 beginning April 23, 1998, when the mother filed the motion to modify.

The trial court also found that the father "has invested a portion of his winnings and can expect to experience a significant increase in income in future years from that source." Accepting the estimate that his income in 1999 would be $70,090, the trial court ordered that child support for 1999 was to be based on that income. Finally, the father was ordered to pay mother's attorney fees of $1,984.64.

## I.

The father contends that child support should be based on the after-tax or net amount of his lottery winnings, rather than the gross amount. We disagree.

Joyce K. Sanchez, Colorado Springs, Colorado, for Appellee.

Robert M. Moyers, Colorado Springs, Colorado, for Appellant.

Child support is based on gross income, and gross income specifically includes "monetary prizes, excluding lottery winnings not required by the rules of the Colorado lottery commission to be paid only at the lottery office." Section 14–10–115(7)(a)(I)(A), C.R.S. 1999; *see In re Marriage of McCord*, 910 P.2d 85 (Colo.App.1995)(under earlier version of statute which included as gross income "gifts and prizes," but did not exclude certain lottery winnings, such winnings were gross income). Section 14–10–115(7)(a) does not provide for deduction of federal and state income taxes in computing gross income for purposes of calculating child support. *In re Marriage of Stress*, 939 P.2d 500 (Colo.App. 1997).

■ The father argues that the gross amount should not be used to calculate support because he will never have access to the withheld portion of his winnings. However, even though taxes withheld are income which is unavailable to the recipient, they are still a component of gross income. *See In re Marriage of Stress, supra.*

The father also argues that under *In re Marriage of Fain*, 794 P.2d 1086 (Colo.App. 1990), whenever a large one-time sum of money is received, the actual amount received should be used to calculate support. However, in that case, the father received a structured settlement of a personal injury claim, which was tax-free. A division of this court held that an amount should not be imputed to represent the amount of tax the father would have paid if the settlement were subject to taxation. Thus, the amount the father actually received there was the "gross" amount of his income and, therefore, support was properly based on that amount.

The circumstances here are distinguishable in that the father's winnings are taxable. Even so, the result in *Fain* supports the use of the gross amount under the plain language of § 14–10–115(7)(a).

Recently, a division of this court in *In re Marriage of Zisch*, 967 P.2d 199 (Colo.App. 1998), relying upon *In re Marriage of Bregar*, 952 P.2d 783 (Colo.App.1997), considered issues, concerning matters of capital gains, similar to those presented here. However, the father's reliance on those cases here is misplaced because those cases stand for the proposition that net income should be used in determining the amount of investment income a large, one-time sum of money may be expected to generate. Indeed, *Zisch* specifically holds that when a large one-time capital gain is received, the gross amount should be used in calculating income in the year of its receipt.

Section 14–10–115(7)(a) plainly states that the gross amount of income is to be used when calculating child support, and we will not judicially legislate an exception for lottery winnings. *See In re Marriage of Lishnevsky*, 981 P.2d 609 (Colo.App.1999) (*cert. denied* August 16, 1999) (declining to read a provision into § 14–10–115). Furthermore, whenever a large sum of money is received by one party, a trial court always has the option to deviate from the presumed amount of support if that amount is inequitable, unjust, or inappropriate. *See* § 14–10–115(3)(a), C.R.S.1999.

Thus, the trial court did not err here in considering the entire $1.2 million the father won in the lottery.

## II.

■ Next, the father contends the trial court erred in counting his winnings twice: once in 1998, by annualizing the gross income for the year, and again in each subsequent year as an income producing asset. We disagree.

The amount received as gross income is used to calculate child support for the year in which the income is received. Thereafter, if a parent invests a portion of the funds which were received as income in one year, any interest earned in the subsequent years is properly included as gross income for purposes of child support. *See In re Marriage of Zisch, supra.*

## III.

■ The father also contends that the trial court erred in entering a child support order that is twice the amount which mother testified was necessary or desirable. We disagree.

Nothing in the child support statute precludes the trial court from ordering a support payment that exceeds the known needs of the child. *In re Marriage of Nimmo*, 891 P.2d 1002, 1007 (Colo.1995) ("The guidelines were not enacted to prevent an increase in a child's standard of living by denying a child the fruits of one parent's good fortune."); *In re Marriage of McCord*, *supra*. Rather, a child support order is calculated to serve the best interests of children and to mitigate the potential harm to them caused by the dissolution of marriage. *In re Marriage of Aldrich*, 945 P.2d 1370 (Colo. 1997).

We find no abuse of discretion in the amount awarded here. The child was entitled to benefit from her father's windfall, and the evidence showed that as of the date of the hearing, she had not. In fact, the mother testified that the father "never bothered to tell [his teenage daughter] he had won." Furthermore, the father testified that he had provided financial help to himself and his extended family, but he did not testify that he had spent any of the funds directly on his daughter. These circumstances support the award here.

### IV.

The father's final contention is that the trial court erred in awarding the mother her attorney fees incurred in bringing the motion to modify child support. Again, we disagree.

Section 14–10–119, C.R.S.1999, permits the trial court to apportion attorney fees and costs in dissolution and post-dissolution matters based upon the relative economic circumstances of the parties. *In re Marriage of Aldrich*, *supra*; *In re Marriage of McNamara*, 962 P.2d 330 (Colo.App.1998).

Here, after making findings as to both parties' financial resources for purposes of child support, the trial court found that the father "is far better able to pay the cost of this proceeding than the [mother]." This is a sufficient basis to support the award. *Cf. In re Marriage of Aldrich*, *supra* (insufficient

findings required remand); *In re Marriage of Zisch*, *supra* (same).

The order is affirmed.

Judge NEY concurs.

Judge TAUBMAN specially concurs.

Judge TAUBMAN specially concurring.

I write separately to reiterate the view expressed in my special concurring opinion in *In re Marriage of Zisch*, 967 P.2d 199, 204 (Colo.App.1998), that a large one-time receipt of income should be considered as income only in the month in which it was received, and thereafter as a financial resource. Because I believe the trial court would have reached the same result under the analysis which I believe is correct, I concur with the result reached by the majority.

*Zisch* involved a one-time receipt of a large capital gain. The majority in that opinion expressed the view that the gross amount of such capital gain should be considered as income for the year in which the capital gain was received. That was the approach used by the trial court here. The trial court averaged father's gross $1.2 million lottery winnings over the entire year of 1998, even though such lottery winnings were not received until April, and mother's motion to modify child support was not filed until April as well. Consequently, the trial court attributed more than $300,000 of father's lottery winnings to the months of January, February, and March, and therefore, did not consider such amount in any way with respect to mother's motion to modify child support.

For the reasons set forth in my special concurring opinion in *In re Marriage of Zisch*, I believe that this approach was incorrect. As I indicated there, nothing in the child support statute, § 14–10–115, C.R.S. 1999, specifies how a large, one-time receipt of income should be treated. In *Zisch*, I noted that anomalous results would follow from spreading out a large capital gain received in November over a two-month period, as opposed to spreading out a capital gain of the same amount received earlier in the year over a greater number of months.

Here, the trial court's approach was not one which I had envisioned when I wrote my special concurring opinion. However, as noted above, the disadvantage of the trial court's approach here was that it did not consider over $300,000 of father's lottery winnings, which the trial court had allocated to the months of January, February, and March.

Indeed, the effect of the trial court's approach would have been even more arbitrary had father received his lottery winnings in November. In that event, the trial court would have apportioned father's winnings over the entire year, but would have considered as income only approximately $200,000 attributed to November and December. Under such an approach, more than one million dollars of father's lottery winnings would not have been considered as income.

In contrast, my view is that father's lottery winnings should have been considered as income only for the month of April 1998. In subsequent months, the unspent amount of his lottery winnings would be considered a "substantial and continuing changed circumstance" pursuant to § 14–10–122(1)(a), C.R.S. 1999. As new wealth, the unspent portion of father's lottery winnings, beginning in May 1998, would have provided a basis for deviating from the child support guidelines under § 14–10–115(3)(a), C.R.S.1999. Further, I believe that beginning in May 1998, the trial court should have begun to compute a reasonable amount of investment income which father's unspent lottery winnings could reasonably be expected to generate. Beginning in May, such income also should have been used to determine an appropriate amount of child support.

Finally, I continue to urge that either the Colorado Child Support Commission or the General Assembly address the issue of how large, one-time receipts of income should be considered for purposes of child support modification and whether such amounts should be treated as income, assets, or both.

Because it is likely that the application of my approach would have led to the same result in the determination of father's child support obligation for 1998, I concur with the result reached by the majority.