55 P.3d 217 (2002)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of J.R.T., a Child, and
Concerning J.M., Respondent-Appellant.
No. 00CA1892.
Colorado Court of Appeals, Div. III.
March 28, 2002.
Certiorari Granted October 15, 2002.
*218 Daniel Kogosvek, County Attorney, Patricia J. Rosales-Chavez, Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee.
Margaret L. Herdeck, Pueblo, Colorado, for Respondent-Appellant.
Opinion by Judge DAILEY.
J.M. (father) appeals from an order increasing child support. We reverse and remand for further proceedings.
Father's initial child support obligation was established in April 1995 based upon earnings of $1866 per month. He was ordered to pay $308 per month child support for his child, J.R.T. In March 2000, the People filed a motion to modify child support.
At the time of the June 2000 hearing, father was earning $2167 per month. However, based upon the finding that father had been terminated for misconduct from two different jobs in which he had earned $4510 and $2648 per month, respectively, the trial court determined that father was voluntarily underemployed under § 14-10-115(7)(b)(I), C.R.S.2001. Imputing income to father of $4510 per month, the court ordered him to pay child support of $543 per month beginning April 1, 2000, increasing to $568 per month beginning September 1, 2000.
In two unrelated matters, father had been ordered to pay additional moneys for the support of two other children.
In this appeal, father contends that: (1) a child support order cannot be modified based upon prior income; and (2) in any event, the trial court erred in concluding that he was voluntarily underemployed simply because he lost one or more lucrative positions through his own fault. We agree with father's second contention.
Regarding his first contention, father directs our attention to that part of § 14-10-122(1)(b), C.R.S.2001, requiring courts to evaluate motions to modify child support in view of "the circumstances of the parties at the time" such motions are filed. Father interprets this language as limiting a court to considering only the actual, not potential, income of the parties.
Father's interpretation, however, is undermined by the preceding text in § 14-10-122(1)(b) requiring "[a]pplication of the child support guideline set forth in section 14-10-115(3) to (16)" to the parties' circumstances at the time the motion was filed. The applicable guideline includes the requirement that child support be "calculated based on a determination of potential income" where, except in certain circumstances not pertinent here, "a parent is voluntarily unemployed or *219 underemployed." Section § 14-10-115(7)(b)(I). See In re Marriage of Bregar, 952 P.2d 783, 784-86 (Colo.App.1997) (applying § 14-10-115(7)(b)(I) in context of motion to modify child support).
Regarding father's second contention, whether a parent is voluntarily underemployed is typically a question of fact for the trial court to resolve, and we will not disturb the trial court's determination unless it is clearly erroneous and not supported by the record. See In re Marriage of Zisch, 967 P.2d 199, 203 (Colo.App.1998). However, we use the "clearly erroneous" standard of review only if the trial court has applied the correct legal standard in making its findings of fact. See NAACP v. Duval County School, 273 F.3d 960, 965 (11th Cir.2001). We review de novo whether the trial court applied the correct legal standard in making its findings, see People v. Richardson, 47 P.3d 718 (Colo.App. No. 99CA1230, Feb. 14, 2002)("A determination of the proper legal standard and application of that standard to particular facts is a question of law."), and conclude, in this instance, that the trial court erred.
The trial court determined that "a finding that a parent has been terminated from his employment for his own misconduct supports a determination that the parent is voluntarily underemployed or unemployed."
We acknowledge the attractiveness of such a position. Parents should know that they might not be able to continue paying or, as here, provide even increased child support if they commit acts leading to their separation from their jobs. Under this line of thinking, a child should not be disadvantaged because of a loss of income caused by the fault of the parent. See In re Marriage of Atencio, 47 P.3d 718 (Colo.App. No. 01CA0347, Mar. 28, 2002)(Jones, J., concurring in part and dissenting in part).
But the General Assembly permits imputation of income to a parent for purposes of assessing a child support obligation only when the parent is "voluntarily unemployed or underemployed." Section 14-10-115(7)(b)(I). To date, no Colorado appellate court decision has addressed the meaning of the phrase "voluntarily unemployed or underemployed" under the circumstances here.
In determining the meaning of that phrase, we give effect to the statutory terms according to their commonly understood and accepted usage. See National Farmers Union Property & Casualty Co. v. Estate of Mosher, 22 P.3d 531, 533 (Colo.App.2000).
Webster's Third New International Dictionary 2564 (1986) defines "voluntarily" as "in a voluntary manner: of one's own free will," and defines "voluntary" as "produced in or by an act of choice" or "done by design or intention." Black's Law Dictionary 1569 (7th ed.1999) similarly defines the term "voluntarily" as "[i]ntentionally; without coercion" and the term "voluntary" as "[d]one by design or intention [voluntary act]."
The common meanings of the terms "voluntarily" and "voluntary" coincide with those used by Colorado appellate courts. See People v. Licea, 918 P.2d 1109, 1112 (Colo.1996)(consent to search is voluntary if it is "the product of an essentially free and unconstrained choice by its maker")(internal quotation marks omitted); People v. Raffaelli, 647 P.2d 230, 234 (Colo.1982)(statement is "voluntary" if it is the product of a free and unconstrained choice); People v. Gray, 975 P.2d 1124, 1127 (Colo.App.1997)(waiver of Miranda rights is voluntary if it is the product of free and deliberate choice).
Significantly, in § 14-10-115(7)(b)(I), the term "voluntarily" directly modifies the phrase "unemployed or underemployed." The plain, definite, and sensible meaning of the provision, then, is that a parent is "voluntarily unemployed or underemployed" when the parent intentionally chooses of his or her own free will to become unemployed or underemployed. See Allen v. Core Target City Youth Program, 275 Md. 69, 79, 338 A.2d 237, 243 (1975)(as used in unemployment compensation statute, phrase "leaving work voluntarily" meant "claimant, by his or her own choice, intentionally, of his or her own free will, terminated the employment").
Because a person who is involuntarily terminated from his position does not intend or choose to become unemployed, the person is not, for that reason alone, "voluntarily *220 unemployed or underemployed" within the meaning of § 14-10-115(7)(b)(I).
This is so even if, as here, the person's own misconduct led to termination from employment. See Wills v. Jones, 340 Md. 480, 496, 667 A.2d 331, 338-39 (1995)(employee's misconduct insufficient in itself to "deem a subsequent termination of employment `voluntary' even if the employee's termination was a foreseeable result of the misconduct"); Lee v. Lee, 459 N.W.2d 365, 370 (Minn.Ct.App. 1990)("Even assuming the willfulness of relator's on-the-job misconduct ..., we are cited to no authority which permits a tribunal to equate willful misconduct with voluntary termination where there is no evidence that the misconduct was an attempt to induce termination and thereby avoid a child support obligation."); Wilson v. Wilson, 43 S.W.3d 495, 497 (Tenn.Ct.App.2000)("We do not think that any time an obligor parent is fired for misconduct he or she is willfully unemployed under that provision of the child support guidelines. Although there is no requirement that a parent intended to avoid their child support obligations by their actions, we do think that willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income.").
For these reasons, we conclude that whether a person lost a job because of willful or knowing misconduct is not determinative of whether the person is voluntarily unemployed or underemployed. What is determinative, however, is the person's subsequent course of action and decision making. A person who has been involuntarily terminated from a position may thereafter become voluntarily unemployed or underemployed by not attempting in good faith to obtain new employment at a comparable salary or by refusing to accept suitable employment offers. See Jensen v. Jensen, 877 S.W.2d 131, 136 (Mo.Ct.App.1994).
Our interpretation of § 14-10-115(7)(b)(I) is consistent with the application of that provision in In re Marriage of Bregar, supra. In Bregar, another division of this court affirmed a determination that a lawyer-parent was voluntarily underemployed when, after having been fired from his law firm, he started a cattle ranch, something he had wanted to do since he was a child, and something which, ultimately, was financially unsuccessful. The division did not rest its affirmance upon the fact that the parent had been fired, but instead upon the magistrate's implicit determinations that the parent's "efforts in starting a cattle raising operation were not reasonable" and his "testimony concerning... efforts to obtain [other] legal employment was not credible." In re Marriage of Bregar, supra, 952 P.2d at 785. The determination in Bregar thus hinged on the parent's actions after being fired.
Here, we conclude that the trial court erred in determining that father was voluntarily underemployed simply because he was fired as a result of his own misconduct. The trial court should have considered the reasonableness of father's attempts, if any, to obtain comparable employment and pay following his firings. Consequently, we reverse the trial court's order and remand the case for consideration of these matters. The trial court may, in its discretion, receive further evidence.
Accordingly, the order is reversed, and the case is remanded to the trial court to conduct further proceedings consistent with the views expressed in this opinion.
Judge NEY and Judge ROY concur.