COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


JOHN B. GOLDHAMER
                                            OPINION BY
v.    Record No. 1916-98-2          JUDGE ROBERT P. FRANK
                                           MARCH 7, 2000
DEBORAH E. COHEN


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     George F. Tidey, Judge

        Jonathan M. Murdoch-Kitt for appellant.

        Thomas Scott Word, III (Matthew N. Ott, P.C.,
        on brief), for appellee.


        John B. Goldhamer (appellant) appeals the chancellor's

decisions to eliminate appellant's midweek overnight visitation

with the parties' child, to calculate appellant's child support

obligation based on the parties' salaries rather than their

gross income, and to disregard appellant's request for

attorney's fees and costs.  Appellant asserts that the trial

judge erred in:  1) eliminating appellant's midweek carryover

visitation and midweek overnight visitation with the parties'

child; 2) disregarding evidence that the child's bowel problems

began when appellant's visitation was reduced; 3) disregarding

the testimony of Dr. Simpson; 4) disregarding evidence that the

child completes his homework under the supervision of a teacher

at the after-school daycare center; 5) disregarding evidence

that appellant has lived in his home for twenty-two years and that the child grew up in appellant's home; 6) ignoring evidence that the child had a history of two midweek overnight visits per week when appellant was in town; 7) disregarding evidence that appellee reduced appellant's midweek visitation with the child without explanation and in violation of an oral agreement; 8) disregarding evidence that appellee would not explain the midweek visitation reduction to the child; 9) disregarding evidence that appellee eliminated the extra "parent duty" appellant provided for child in place of a babysitter; 10) disregarding evidence that appellee has been diagnosed with Obsessive Compulsive Disorder disease, which has affected the child; 11) excluding evidence from appellee's psychologist and appellant's psychologist that people with food addiction can be addicted to other things, including the love of a child or a relationship with a child; 12) ignoring evidence showing appellee's salary, bonus, and stock grant; 13) omitting appellee's passive income as reported on her 1997 federal income tax return; 14) failing to refund appellant the excess child support he paid to appellee; 15) excluding evidence of appellee's gift and trust income; 16) accepting appellee's estimated income for 1997 as $33,716.10 when the evidence showed her income was $125,212; 17) misclassifying on-going pure trust income as a one-time inheritance; 18) disregarding appellee's evidence that financial transactions between appellee and her

father and her father's trust were not "arm's length" transactions; and 19) disregarding appellant's request for attorney's fees and costs.  We affirm the chancellor's decision as to visitation and reverse and remand the chancellor's determination of child support.

## I.  BACKGROUND

The parties separated in 1995, and the final decree of divorce was entered on October 15, 1996.  They have one child, a son, who is now nine years old.  The parents have joint custody, but the child's primary residence is with appellee.  From the time of their separation, the parties followed their separation agreement (Agreement) concerning visitation.  The Agreement schedule gives appellant overnight visitation one night per week during the work week and weekend visitation every other weekend.  Appellant is a tax auditor and is out of town on business approximately twenty-two weeks per year.  Appellee permitted appellant to have two nights of midweek overnight visitation during the weeks when he was working in town, which allowed him the same amount of visitation as described in the Agreement.  The parties refer to this as "carryover visitation."  This arrangement was by oral agreement only.  Appellee also asked appellant to care for the child on nights when she had meetings, appointments, or was out of town for work or medical treatment.  The parties refer to this as "parent duty."  The carryover visitation and parent duty arrangement ended in February 1997,

allegedly when appellant inquired about appellee's 1996 financial information for the purpose of calculating child support. The Agreement states that the parties shall exchange financial information on or before February 15 of each year.

On May 22, 1997, appellant filed a motion to amend or review the order for child support and visitation in the Henrico County Juvenile and Domestic Relations District Court. The juvenile and domestic relations district court amended the visitation schedule to eliminate appellant's midweek overnight visitation under the Agreement. Appellant was given one evening visitation with the child from after school until 7:00 p.m. during the work week. Under the Agreement, appellant paid $677 per month in child support. The juvenile and domestic relations district court ordered child support payments in the amount of $635 per month.

Appellant appealed to the Henrico County Circuit Court. The chancellor heard evidence from both parties, the child's treating psychologist, and an evaluative psychologist hired by appellant. The chancellor ruled that the midweek overnight visitation should be eliminated but extended appellant's evening visitation until 8:00 p.m. The chancellor ordered the child support amount to be based on the parties' "current income." While the record was not completely clear as to appellee's total assets, evidence in the record proved that, in addition to her salary, appellee received interest income from three

interest-bearing accounts in 1996 and 1997, $9,500 from the Raymond Cohen Trust in 1996, $10,000 from the Leah Cohen Trust in 1996, $10,000 from the Leonard Lewis Trust in 1996, $6,110 from the Bernadine/Louis Silverman Trust in 1996, a $2,550 bonus from her employer in 1997, overtime pay in 1997, $4,835 from the Raymond Cohen Trust in 1997, $750 from Raymond Cohen, individually, in 1997, a 1990 Honda Accord valued at $8,000 from Raymond Cohen, individually, in 1997, $68,343 from the Bernadine/Louis Silverman Trust in 1997, five shares of National Auto Supply Company stock from the Bernadine/Louis Silverman Trust in 1998, and 12.5 shares of stock in Russ Nixon Auto Parts, Inc. from the Bernadine/Louis Silverman Trust in 1998. The record also established that appellee has an Individual Retirement Account (IRA), a deferred compensation plan with her employer, and a mortgage from the Raymond Cohen Trust for her home with the principal amount of $87,000 at a fixed interest rate of 6.5%.

## II.  ANALYSIS

Appellant challenges the chancellor's decisions to eliminate midweek overnight visitation, to base appellant's child support obligation on the parties' salaries rather than on their gross income, and to disregard appellant's request for attorney's fees and costs.  We affirm the chancellor's elimination of the midweek overnight visitation and the chancellor's decision not to award attorney's fees.  We reverse

and remand for determination of appellant's child support obligation and consideration of appellant's request for costs.

Appellant's assignments of error one through eleven pertain to the chancellor's ruling on visitation. All of these assignments challenge the sufficiency of the evidence. We, therefore, consider these assignments of error together.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id. at 328, 387 S.E.2d at 795 (citing Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 12 (1986)). "A trial court's determination of matters within its discretion is reversible on appeal only for an abuse of that discretion . . . and a trial court's decision will not be set aside unless plainly wrong or without evidence to support it." Id. (citations omitted). In the determination of a change of visitation, the trial court "must apply a two-pronged test: (1) whether there has been a change in circumstances since the most recent [visitation] award, and (2) whether a change in [visitation] would be in the best interests of the child." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (citation omitted).

While the testimony was conflicting, sufficient evidence in the record supports the chancellor's decision.  The evidence showed that the child began having problems with soiling himself.  The child's treating psychologist testified that the midweek overnight visitation disrupted the child's schedule for "normal sleeping and waking, homework and other activities."  The psychologist further stated that when a child shifts between two homes during the week, "it is destabilizing for them and it affects their school work, their social interaction as well as other basic bodily functions:  eating, sleeping, and going to the bathroom."  Thus, there was expert testimony from the child's treating psychologist supporting the chancellor's determination that elimination of the midweek overnight visitation was in the best interests of the child.  Finding ample evidence in the record to support the chancellor's decision that the best interests of the child would be achieved by eliminating the overnight midweek visitation, we will not disturb the chancellor's determination of this issue on appeal.

Appellant's assignments of error twelve through nineteen pertain to the chancellor's ruling on child support.  We, therefore, consider these assignments together.

Code § 20-108.2(C) defines gross income for the purposes of determining child support as:

> income from all sources, and shall include, but not be limited to income from salaries, wages, commissions, royalties, bonuses,

> dividends, severance pay, pensions,
> interest, trust income, annuities, capital
> gains, social security benefits except as
> listed below, workers' compensation
> benefits, unemployment insurance benefits,
> disability insurance benefits, veterans'
> benefits, spousal support, rental income,
> gifts, prizes or awards.

Appellant contends the chancellor computed appellee's gross income without considering the correct amount of appellee's salary, bonuses, stock grant, and passive income. We are unable to discern from the record the amounts the chancellor used in computing appellee's gross income. It is clear, however, that bonuses, stock grants, interest income, dividends, and capital gains are included as gross income pursuant to Code § 20-108.2(C). Thus, on remand, the chancellor must consider these amounts in computing appellee's gross income.

Appellant contends the chancellor did not consider appellee's gift income or inheritance in the computation of her gross income. Evidence in the record proved that appellee received gifts from the Raymond Cohen Trust, the Leah Cohen Trust, the Leonard Lewis Trust, and Raymond Cohen, individually. Appellee also testified that she received income from the Bernadine/Louis Silverman Trust, which she stated was an inheritance.[1]

---

[1] Appellee testified that this income was an inheritance. For the purposes of this opinion, we assume that this characterization is correct.

The chancellor, in his opinion, stated, "I feel child support should be based on the current income of the parties. I did not use the past inheritance of Ms. Cohen because they are not to extend into the future." The chancellor's opinion apparently only considered the inheritance from the Bernadine/Louis Silverman Trust. He did not address the gifts from appellee's living relatives, which include the gifts from the Raymond Cohen Trust, the Leah Cohen Trust, the Leonard Lewis Trust, and Raymond Cohen, individually.

"Gifts" are included in the computation of gross income. See Code § 20-108.2(C). A gift is property that is voluntarily transferred to another without compensation. See Black's Law Dictionary 696 (7th ed. 1999). A testamentary gift is a "gift made in a will." Id. at 697. For the purposes of computation of gross income under Code § 20-108.2(C), we hold that any inheritance is a gift, whether by will or intestate succession. We include transfers of property by intestacy as "gifts." We assume that the intestate heirs are the intended donees because the decedent did not specify any other disposition of his or her property.

In this case, the chancellor ruled that the inheritance was not included in the gross income amount because it "would not extend into the future." Any type of gift is irregular income and, therefore, may or may not extend into the future. The statute clearly includes irregular income in the gross income

computation because gifts, prizes, or awards are defined as gross income. See Code § 20-108.2(C). The chancellor's reasoning for not considering appellee's inheritance is contrary to the express language of the statute.

We hold that gifts, including inheritances, should be considered in the gross income computation.[2] If the application of the guidelines after including the gift is unjust or inappropriate, the chancellor may make written findings and deviate from the guidelines amount based on the statutory factors in Code § 20-108.1(B). Specifically, the chancellor may consider "other factors" in the determination of whether to deviate from the guidelines amount. See Code § 20-108.1(B)(18). We hold "other factors" include, but are not limited to: whether the financial resources were used to reduce marital

_____

[2] In Smith v. Smith, 18 Va. App. 427, 434, 444 S.E.2d 269, 274 (1994), we held that the trial judge did not abuse his discretion in failing to include capital gains in the gross income computation where the realization of the capital gains was not contemporaneous with the support hearing and "[n]o income realized from the capital gain[s] remained as a liquid asset from which support could be paid." We also noted that the gains were "used to reduce marital debt or enhance the marital estate and presumably [were] taken into account" in the concomitant equitable distribution proceeding. Id. Smith makes clear that contemporaneous capital gains should be included in the gross income computation. Determining what income is contemporaneous is an issue for the trier of fact, depending on the circumstances of each case, subject to the appropriate standard of review on appeal. However, we do not read Smith to hold that it would be error to include non-contemporaneous capital gains in the gross income computation. Deviation from the guidelines amount may be appropriate depending on the circumstances.

debt, enhance the marital estate or benefit any child; whether the asset is received with regularity; whether the asset is liquid; and whether the asset or property is income-producing. Therefore, the gifts to appellee from the Raymond Cohen Trust, the Leonard Lewis Trust, the Leah Cohen Trust, and Raymond Cohen, individually, should have been considered by the chancellor in computing appellee's gross income. Additionally, the inheritance, including the shares of stock, appellee received from the Bernadine/Louis Silverman Trust should have been considered in the chancellor's computation of gross income.

Finally, appellant contends the chancellor erred in disregarding appellant's request for attorney's fees and costs. We find that the chancellor did not disregard appellant's request for attorney's fees but failed to rule on appellant's request for costs. The chancellor accepted appellant's exhibit regarding fees and costs at the June 8, 1998 hearing, and ruled that each party would be responsible for his or her own attorney's fees in his letter opinion dated June 11, 1998. We, therefore, remand this matter for consideration by the chancellor of appellant's request for costs.

## III. CONCLUSION

For these reasons, we hold that the chancellor did not err in eliminating appellant's midweek overnight visitation with the parties' child, because credible evidence supports the chancellor's determination that the best interests of the child

required a stable routine during the work week.  We also hold

that the chancellor erred in the computation of appellee's gross

income.  We remand this matter for computation of appellee's

gross income pursuant to the views stated herein.  Further, we

hold that the chancellor did not disregard appellant's request

for attorney's fees but failed to rule on the issue of costs.

Therefore, we remand for consideration of an award for costs.

<u>Affirmed in part,
reversed in part
and remanded.</u>

Elder, J., concurring.

I concur in the result reached by the majority but write separately to clarify my view of the holding in Smith v. Smith, 18 Va. App. 427, 444 S.E.2d 269 (1994), discussed by the majority in footnote 2.  I interpret Smith to hold that contemporaneous gains must be included in the gross income calculation and that non-contemporaneous capital gains ordinarily may not be included.  See id. at 434, 444 S.E.2d at 274.  Determining what income is contemporaneous is an issue for the trier of fact, depending on the circumstances of each case, subject to the appropriate standard of review on appeal.  Income not received contemporaneously may nevertheless serve as a basis for deviating from the presumptive amount.  See Code § 20-108.1(B).