**In re the Interest of A.M.D., a Child, and Concerning Susan K. Casteel, Appellee,**

**and**

**John M. Davidson, Appellant.**

**No. 00CA1857.**

Colorado Court of Appeals, Div. I.

April 11, 2002.

Certiorari Granted Nov. 4, 2002.

Law Offices of Margaret L. Herdeck, Margaret L. Herdeck, Pueblo, Colorado, for Appellee.

Carolyn M. Kelly, P.C., Carolyn M. Kelly, Colorado Springs, Colorado, for Appellant.

Opinion by Judge ROTHENBERG.

John M. Davidson (father) appeals from the trial court's order increasing his child support obligation to Susan K. Casteel (mother) for the parties' minor child. The primary issue in this appeal is the treatment of a party's inheritance in calculating child support. Because we agree with the father that the trial court erred in this regard, we reverse and remand for further proceedings.

The parties were never married, but lived together for twelve years during which time the minor child was born. In January 1998, the mother filed this action for paternity, custody, child support, and a determination of parenting time. The parties resolved most of the issues by agreement, but could not agree on child support and parenting time.

In December 1998, the father received an inheritance from his mother. It was valued at $149,298 and included an Individual Retirement Account (IRA) belonging to her. He was required to report as income, for tax purposes, distributions from the IRA, and in April 1999, he reported a distribution of $47,379. After federal and state taxes were paid on that amount, he received $33,298.

In October 1999, after a hearing, the trial court reduced the father's parenting time and calculated his child support obligation. The court included as gross income the father's entire IRA distribution for 1999 of $47,379, and any future distributions from the inheritance, including withdrawals the father contemplated from the principal of the remaining inheritance. The court refused the father's request to deduct taxes that he was required to pay or would be required to pay in the future on the inheritance.

The court also imputed to the father interest income of $218 per month in 1999 and for each subsequent year for the purposes of calculating child support. The $218 figure was based on expert testimony that the $47,379 gross distribution would produce that monthly income. The court also found the father had sustained an injury in 1981 and because he had not been employed full time since that time, the court imputed to him an additional minimum monthly income of $893. The mother's monthly gross income was determined to be $2,212 in 1998 and $2,363 in 1999.

### I. Calculation of Child Support

The father raises several contentions regarding the manner in which the trial court calculated child support. We agree the matter must be remanded for recalculation of child support.

### A.

The father first contends the court erred in including as gross income the entire 1999 distribution he received from his mother's IRA and future distributions he will receive from the inheritance. He relies upon income tax rules that exclude inheritances from gross income and maintains that these tax rules should be determinative under the child support guidelines. While we reject the father's argument that tax rules are determi-

native in calculating child support, we agree the trial court incorrectly included as gross income the entire distribution received by him in 1999.

The basic child support obligation is determined by applying the schedule in § 14–10–115(10)(b), C.R.S.2001, to the parents' combined gross incomes. *See* § 14–10–115(10)(a), C.R.S.2001.

Under § 14–10–115(7)(a)(I)(A), "gross income" includes "income from any source," including a long list of specific items such as "monetary gifts." The definition was recently amended to include large lottery winnings. *See In re Marriage of McCord,* 910 P.2d 85 (Colo.App.1995)(concluding lottery winnings were included as "income from any source," as used in § 14–10–115(7)(a)(I)(A), under prior version of statute, which included "gifts and prizes" in gross income, but did not exclude certain lottery winnings).

■ Inheritances are not specifically mentioned in the statute. "Gifts" are mentioned in the statute, but in *In re Marriage of Nimmo,* 891 P.2d 1002, 1007 (Colo.1995), the supreme court adopted the rule that a "gift" under the Uniform Dissolution of Marriage Act "may properly be used to determine the amount of a child support obligation" only if it is "regularly received from a dependable source." Applying that definition, the father's one-time lump sum inheritance from his mother does not constitute a "gift" under § 14–10–115(7)(a)(I)(A) because it was not regularly received from a dependable source.

Nevertheless, the general phrase "income from any source," as used in § 14–10–115(7)(a)(I)(A), has been construed broadly to include payments that are received under a structured settlement in a personal injury claim, *see In re Marriage of Fain,* 794 P.2d 1086 (Colo.App.1990), as well as the interest included in payments received under a settlement reducing the return of an original investment, *see In re Marriage of Laughlin,* 932 P.2d 858 (Colo.App.1997).

In *In re Marriage of Armstrong,* 831 P.2d 501 (Colo.App.1992), a panel of this court also held that income an inheritance could generate should be included within "gross income." The panel reasoned that under the plain language of § 14–10–115(7)(a)(I)(A), "gross income" includes "all payments from a financial resource, whatever the source thereof." *In re Marriage of Armstrong, supra,* 831 P.2d at 503.

There, the parties' marriage was dissolved in 1982, and child support was set at $400 per month. When the father later received a $395,000 inheritance, the mother sought an increase in child support. In granting the increase, the trial court ruled that "the income which the inheritance could be expected to generate, within a reasonable degree of accounting, must be considered as a financial resource or income for purposes of determining child support." *In re Marriage of Armstrong, supra,* 831 P.2d at 502.

On appeal, the father contended the trial court erred in finding that the income his one-time, postdecree inheritance could generate was a financial resource that constituted gross income for the purpose of calculating and modifying child support. There, as here, the father argued that because inherited funds were not considered gross income for federal or state tax purposes, they should not be so considered under the child support guidelines.

The panel in *Armstrong* rejected the argument that income tax rules were determinative of the definition of a source of income under the child support guidelines. *In re Marriage of Armstrong, supra,* 831 P.2d at 503; *see In re Marriage of Nimmo, supra,* 891 P.2d at 1006 n. 7 ("[A] source of income under the child support guidelines is not determined by other definitions which may be used for federal or state income tax purposes." (quoting *In re Marriage of Armstrong, supra,* 831 P.2d at 503)); *In re Marriage of Fain, supra.*

■ Similarly, we reject the father's contention here that federal or state tax laws are determinative of gross income and that his inheritance should not have been considered such for the purposes of calculating child support. In so holding, we note that while inheritances may not be treated as income for tax purposes, *see* 26 U.S.C. § 102 (2000), distributions from an inherited IRA are man-

datory and fully taxable as income upon receipt. *See* 26 U.S.C. § 408(d)(1) (2000).

### B.

However, we agree with the father that the trial court must reconsider the manner in which it calculated the child support.

In *In re Marriage of Armstrong, supra,* 831 P.2d at 503, the panel upheld that portion of the trial court's ruling which included "as part of [the father's] income, a sum that the inheritance could be expected to have yielded." The trial court treated the father's inheritance as a financial resource that would generate income, reasoning that:

> [U]se of the income for determining the amount of child support *without invasion of the principal* allows the corpus to be used during the minority of the children and to be freed for use by [the father] once the child support obligation is extinguished, either through emancipation or when the children reach the age of majority.

*In re Marriage of Armstrong, supra,* 831 P.2d at 502 (emphasis added).

On appeal, the panel in *Armstrong* cited that reasoning with approval. Although the panel did not directly address whether the entire corpus of the inheritance could be considered as gross income during the year it was received, the above-quoted language from *Armstrong* suggests it should *not* be so treated because, to do so, would necessarily invade the principal.

We recognize that in cases not involving inheritances, panels of this court have approved a different approach. In *In re Marriage of Zisch,* 967 P.2d 199, 201 (Colo.App. 1998), after acknowledging "the lack of clear guidance on this issue," a majority of a division of this court held that for purposes of child support, the total amount of a large one-time capital gain should have been included in a party's gross income during the year it was received. The panel in *Zisch* concluded that, in subsequent years, the asset could be considered a financial resource of the parties that could reasonably be expected to generate income, and such income should be included for child support pur-

poses. *See also In re Marriage of Upson,* 991 P.2d 341 (Colo.App.1999)(including as a capital gain in determining "gross income" the post-property division appreciation realized on the sale of a home acquired in a property division from a dissolution of marriage); *In re Marriage of Bregar,* 952 P.2d 783 (Colo.App.1997)(addressing capital gains).

Also, in *In re Marriage of Bohn,* 8 P.3d 539 (Colo.App.2000), a division of this court, relying on *Zisch,* upheld the trial court's determination that the entire lottery proceeds received by a party who chose the cash option should be treated as gross income in the year of their receipt.

These cases are difficult to reconcile. However, large lottery proceeds and capital gains are among the items specifically designated by the General Assembly as "gross income" in § 14–10–115(7)(a)(I)(A), whereas the statute has been judicially construed to include income from inheritances within the general category of "income from any source." *See In re Marriage of Armstrong, supra.* We also cannot discern whether the trial courts in *Zisch* and *Bohn* even addressed whether the capital gains or lottery proceeds should have been viewed only as a resource that would generate income. That issue was not addressed by either division on appeal.

We rely on *Armstrong* because it addressed the same type of asset as that before us now, a one-time inheritance. We are also persuaded that the rationale of the trial court and the panel there establishes a fair and reasonable manner of addressing inheritances consistent with the statutory language, "income from any source."

■ Accordingly, we conclude the trial court properly included as part of the father's 1999 gross income a sum his inheritance could be expected to generate, but erred in including as gross income for 1999 the entire distribution from the inheritance. *See In re Marriage of Armstrong, supra.*

In so holding, we recognize there may be circumstances in which the yield from an inheritance is insufficient to meet the reasonable needs of the minor children. Nothing in

this opinion should be read to preclude a trial court from deviating from the child support guidelines, if appropriate, *see* § 14–10–115(3)(a), C.R.S.2001, or from considering the corpus of an inheritance for child support purposes, if otherwise permitted by law.

We further conclude the trial court correctly imputed a reasonable investment return on the corpus of the inheritance. *See In re Marriage of Bregar, supra* (husband's sales proceeds were an asset that could reasonably be expected to generate income even if consumed prior to the support determination); *In re Marriage of Armstrong, supra*.

### C.

Because it will arise on remand, we next address the issue of whether taxes should have been considered by the trial court *in any manner* in calculating child support. We conclude that, on remand, in calculating the sum the father's inheritance could be expected to yield, the trial court should consider the amount of the distribution the father actually received and will receive in the future after taxes are paid.

Section 14–10–115(7)(a) does not provide for the deduction of federal and state income taxes in computing gross income for the purposes of child support.

■ Nevertheless, in *In re Marriage of Armstrong, supra*, certain items had to be paid as a condition to the father's receipt of the inheritance. Because those amounts were unavailable to the father, the panel concluded the trial court erred to the extent it did not deduct such items in calculating the father's inheritance. Applying this reasoning, the father here contends that only the after-tax IRA distribution should be used to determine his gross income because taxes were owed and were immediately paid out of the distribution. We agree.

*Armstrong* did not involve taxes, but the father is correct that, as in *Armstrong*, only a net amount of $33,298 was actually available to him in 1999. The trial court's order reflects this reality regarding the amount of the IRA distribution and the income taxes that were paid, although the court did not make any adjustment for the taxes paid.

The court here also imputed to the father interest income of $218 per month in 1999, and for each subsequent year, based on expert testimony that the $47,379 gross distribution would produce that income for the father. This calculation of interest income cannot be reconciled with the court's finding and the undisputed evidence that the father *did not have* $47,379 because he had paid over $11,000 in taxes.

Contrary to the mother's contention, *In re Marriage of Bohn, supra*, does not preclude the trial court from considering the taxes paid by the father.

In *Bohn*, a panel of this court addressed the treatment of lottery proceeds in calculating child support and concluded that even though withheld taxes admittedly were unavailable to the recipient, they were still a component of gross income. But, in *Bohn*, the trial court issued its child support order *"[a]fter considering the taxes* the father would pay for 1998 income," the year in which he took his entire lottery proceeds. *In re Marriage of Bohn, supra*, 8 P.3d at 540 (emphasis added).

Here, the trial court issued its child support order without considering the taxes and, in doing so, imputed a stream of income to the father based on money that the father did not, in fact, have. *See In re Marriage of Bregar, supra* (amounts paid as tax cannot reasonably be expected to generate any income and, therefore, should be deducted from the amount imputed as income on the principal asset). We read *Armstrong* as requiring that the calculation of future income be based upon an actual sum.

Accordingly, on remand, the trial court should reconsider the child support calculation, and in determining the sum the father's inheritance may be expected to yield, it should consider the taxes shown to have been paid by the father for the IRA distribution. *See In re Marriage of Armstrong, supra*. We do not view this result as inconsistent with the panel's holding in *Bohn*. Again, the trial court has the discretion to deviate from the presumed amount of support under the child support guidelines, if appropriate. *See* § 14–10–115(3)(a).

### D.

In view of our conclusions, we agree with the father's related contention that the trial court erred in determining the manner in which future distributions from his inheritance will be attributed to him for child support calculations. To the extent the father receives such distributions, the court should determine future child support based on the principles set forth above.

### E.

We also agree with the father's contention that the trial court erred in crediting the mother for monthly daycare expenses in the amount of $245.

■ Job-related child care costs are to be added to the basic support obligation and divided between the parents in proportion to their income. Section 14–10–115(11)(a), C.R.S.2001. Only those costs actually incurred may be considered in the support calculation, *In re Marriage of Mackey*, 940 P.2d 1112 (Colo.App.1997), but the statute does not require that such expenses qualify for the federal income tax credit.

■ Here, however, the mother's financial affidavit does not support the amount of the credit given by the trial court. Although there was other evidence indicating the mother commonly used a babysitter five days a week, we cannot discern from this record a basis for crediting the mother for monthly daycare expenses in the amount of $245.

On remand, the trial court should reconsider this portion of its order as well and make additional findings regarding the appropriate credit for child care to which the mother is entitled. The court then should recalculate any arrearages accordingly.

### F.

Given our conclusion that a remand for further proceedings is required for the recalculation of support, we need not address the father's argument that the court's income calculation—which combines his imputed income, the interest income earned on the inheritance, and the income derived from the distributions he takes from the inheritance—results in an exorbitant and oppressive support obligation.

### II. Worksheet Used

The father next contends, and the mother concedes, that the trial court erred by applying Worksheet A instead of Worksheet B to calculate child support arrearages from August 1998 to October 1999. Accordingly, we remand to the trial court for a recalculation of those arrearages using Worksheet B. Because the parties also dispute the number of overnights in excess of 104 that the father exercised during that time, on remand the trial court should resolve that issue as well.

The order is reversed, and the case is remanded to the trial court for further proceedings to recalculate child support and arrearages in accordance with the views expressed in this opinion. Until the new order is entered on remand, the father's support obligation shall remain at the level set by the trial court at the original permanent orders.

Judge METZGER and Judge KAPELKE concur.