78 P.3d 741 (2003)
In re the Interest of A.M.D., a CHILD,
Suzan K. Casteel, Petitioner,
v.
John M. Davidson, Respondent.
No. 02SC333.
Supreme Court of Colorado, En Banc.
October 20, 2003.
Law Offices of Margaret L. Herdeck, Margaret L. Herdeck, Pueblo, Colorado Attorney for Petitioner.
No appearance for Respondent.
Chief Justice MULLARKEY delivered the Opinion of the Court.

I. Introduction
In this child support case, we address whether and to what extent an inheritance may be included in a parent's gross income for purposes of determining child support obligations. The trial court concluded that the principal of an inheritance can be included in gross income, but only to the extent that the beneficiary relies on the principal as *742 a source of income. The remainder of the principal, the court held, should be counted as an asset, and any interest generated by this asset should be included in the parent's gross income. The court of appeals disagreed, holding that while the interest generated from an inheritance qualifies as gross income, the inheritance's corpus, or principal, never does. In re A.M.D., 56 P.3d 1184 (Colo.App.2002).
We agree with the trial court. To the extent that the beneficiary relies on a monetary inheritance as a source of income, the inheritance should be included in the gross income in that year. To the extent, however, that the beneficiary does not expend or use the inheritance, it should be treated as an income producing asset and the interest it generates should be included in gross income. Interest may be imputed if necessary. If the result is inequitable, unjust, or inappropriate, a court may deviate from the guidelines pursuant to section 14-10-115(3)(a), 5 C.R.S. (2002).

II. Facts and Procedural History
Suzan K. Casteel ("mother") and John M. Davidson ("father") were never married but cohabitated for twelve years and had one child, A.M.D. In January 1998, the mother filed an action for paternity, custody, child support, and a determination of parenting time. The parties stipulated to several of these matters but could not reach an agreement regarding child support. In August 1998, the trial court temporarily ordered the father to pay a child support obligation of $32.00 per month pending additional discovery on the father's income and a hearing on the issue.
In 1999, the father received a cash inheritance from his mother. This inheritance was transferred to the father's trust account[1] in four installments, as follows:
$50,000 on 4/20/99
$47,298 on 4/20/99
$27,000 on 7/8/99
$25,000 on 8/19/99
for a total of $149,298 in cash.
The second deposit of $47,298 differed from the other three depositsit was the deceased's individual retirement account ("IRA"). Federal tax law requires that an heir report an IRA as taxable income when it is received as an inheritance.[2] Consequently, in 2000, when the father filled out his 1999 tax returns, he reported this IRA as income and paid federal and state taxes on it in the amount of $11,268.
The father made withdrawals from his investment account in 1999 as follows:
$4,000 on 2/23/99
$7,298 on 4/20/99
$7,000 on 7/8/99
$15,000 on 8/19/99
for a total of $33,298 in cash. The first withdrawal of $4,000 came from the preexisting balance on the account (the account already had $29,874.78 at the beginning of 1999). The final three withdrawals corresponded to the deposits of the inheritance.[3]
In August 2000, after a hearing on the parties' child support and financial issues, the trial court held that the father's gross income for 1999 should include: (1) imputed employment income equivalent to employment at the minimum wage (the court deemed the father underemployed); (2) the amount the father withdrew from the principal of the *743 inheritance in that year; and (3) imputed interest income generated from the inheritance. In determining what amount the father had "withdrawn" from his inheritance during 1999, the trial court looked not to the $33,298 the father actually withdrew from the investment account that year, but rather to the $47,379 IRA that the father reported on his 1999 income tax.[4]
The father appealed, arguing that the trial court erred by including the entire $47,379 IRA as gross income in its 1999 child support calculation. More specifically, the father argued that the trial court should have considered only the $33,298 he actually withdrew that year.
The court of appeals agreed that the trial court miscalculated the father's gross income, but went beyond the father's argument to hold that no portion of the inheritance's principal, regardless of whether or not it was actually withdrawn, could be considered income for child support purposes. In re A.M.D., 56 P.3d at 1184. Instead, only the imputed interest income generated from the net value of the inheritance could be included as gross income. Id. at 1188.
We reverse the holding of the court of appeals. Instead, as the trial court correctly held, the broad definition of gross income in section 14-10-115(7)(a)(I)(A), 5 C.R.S. (2002), includes monetary inheritances. We agree with the trial court that only the portion of the inheritance that the father withdrew and spent should be included in gross income, and that the remainder of the inheritance should be treated as an interest-generating asset. The trial court, however, erred in its calculations of the father's 1999 gross income, and erred in its valuation of the ongoing asset upon which to impute interest.

III. Analysis
Our discussion is divided into three parts. First, we address the threshold question of whether an inheritance is gross income under Colorado's child support guidelines. Second, in concluding that a monetary inheritance is gross income for child support purposes, we address in detail how much, if any, of the inheritance should be included in gross income. Third, we discuss the amount of interest that should be included in gross income.

1. Inheritance As Gross Income
To determine whether an inheritance can be gross income for purposes of calculating child support, we look first to the plain language of Colorado's child support guidelines contained in the Uniform Dissolution of Marriage Act. §§ 14-10-101 to XX-XX-XXX, 5 C.R.S. (2002). Colorado's child support guidelines define "gross income" very broadly:
"Gross income" includes income from any source and includes, but is not limited to, income from salaries; wages ...; bonuses; dividends; severance pay; pensions and retirement benefits ...; royalties; rents; interest; trust income; annuities; capital gains ...; monetary gifts; monetary prizes ...; and alimony or maintenance received.
§ 14-10-115(7)(a)(I)(A) (emphasis added). Section 14-10-115(7)(a)(I)(A) does not expressly address the term "inheritance" in defining gross income. However, courts have taken an inclusive approach to other one-time gains such as lottery winnings, capital gains, and personal injury settlement payments. Each is considered gross income. In re Marriage of Bohn, 8 P.3d 539 (Colo.App.2000) (lottery winnings); In re Marriage of Zisch, 967 P.2d 199 (Colo.App.1998) (capital gains); In re Marriage of Fain, 794 P.2d 1086 (Colo.App.1990) (personal injury settlement payments).
Moreover, section 14-10-115(7)(a)(I)(A) specifically includes "monetary gifts" in gross income. A monetary inheritance is a particular form of a "monetary gift"it is simply testamentary, rather than inter vivos, in nature. Thus, the plain meaning of "monetary gifts," and gross income, properly includes monetary inheritances.
*744 Because the language is clear, we need not look any further to support our statutory interpretation. Even assuming some ambiguity, however, a review of the legislative history reveals no legislative intent to exclude one-time monetary receipts such as inheritances from gross income. To the contrary, when the legislature rewrote the definition of gross income in 1996, it approved the inclusion of one-time cash receipts by adding large lottery winnings to the definition of gross income. See Hearings on S.B. 96-2 Before the Senate Judiciary Comm., 60th Gen. Assembly, 2nd Reg. Sess. (Mar. 12, 1996) (statement of Andrea Baugher, Colorado Division of Child Support Enforcement); see also In re A.M.D., 56 P.3d at 1186.[5] Furthermore, the statute explicitly includes monetary prizes, bonuses, capital gains, and severance pay. These sources of income can all fluctuate dramatically from year to year. From this, we conclude that the legislature understood that annual incomes vary, and it intended for gross income to reflect actual monetary receipts, even if these receipts are non-recurring windfalls or one-time events.
The court of appeals acknowledged the broad statutory definition of gross income, but then interpreted our decision in In re Marriage of Nimmo, 891 P.2d 1002, 1007 (Colo.1995), to mean that if a gift is received as a one-time lump sum rather than "regularly received from a dependable source," it cannot qualify as a "gift" under the meaning of section 14-10-115(7)(a)(I)(A). In re A.M.D., 56 P.3d at 1186.
The court of appeals misconstrued Nimmo and applied its holding too broadly. Nimmo involved a discovery dispute between divorced parents. The ex-wife had remarried and was not employed outside the home. In that case, we considered whether the ex-husband was entitled to conduct discovery regarding all current and ongoing gifts received by his former wife, "including without limitation, jewelry, clothes, entertainment, travel, and restaurant meals,"[6] provided to her by her new husband. Nimmo, 891 P.2d at 1004. This court held that the ex-husband was entitled to conduct discovery on these gifts in order to prove that future gifts would be "regularly received from a dependable source" rather than "speculative." Id. at 1008 (citing Barnier v. Wells, 476 N.W.2d 795, 797 (Minn.Ct.App.1991), holding that a future "expected gift" cannot be used to determine child support obligations unless the gift is "regularly received from a dependable source"). In the context of Nimmo, the trial court was calculating future child support obligations, and necessarily had to predict future gross income. Therefore, the father in that case wished to discover whether the gifts to the mother were reliable enough to project into the future. Nimmo does not apply in cases such as the one at hand, in which the trial court is calculating child support payments based on actual income received. Nimmo, in sum, does not proscribe including actual, one-time receipts in gross income.
Including monetary inheritances in gross income is also consistent with cases from other states where the applicable child support statutes are very similar to that of Colorado. In Indiana, for example, where the statutory definition of gross income includes "income from any source" and "gifts," the principal of an inheritance is considered gross income for child support purposes. Gardner v. Yrttima, 743 N.E.2d 353, 357-58 (Ind.App.2001). Likewise, in Virginia, where gross income is statutorily defined as "income from all sources, and shall include, but not be limited to income from ... gifts, prizes or awards" the entire inheritance is treated as gross income. Goldhamer v. Cohen, 31 Va.App. 728, 525 S.E.2d 599, 602 *745 (2000); Forsythe v. Forsythe, 41 Va. Cir. 82 (1996). In these states, the explicit inclusion of "gifts" in the statutory definition of income is pivotal. See Gardner, 743 N.E.2d at 358 (holding that the court could "discern no appreciable difference between one who receives property by an inter vivos gift and one who receives the same or similar property by testamentary transfer, nor can we discern a logical reason to include one [in gross income] and exclude the other"); Goldhamer, 525 S.E.2d at 603 (saying that "any inheritance is a gift, whether by will or intestate succession ... and not considering appellee's inheritance is contrary to the express language of the statute"); Forsythe, 41 Va. Cir. 82 ("An inheritance is a gift, albeit testamentary in nature. Gifts are clearly gross income under the statute.").
Unlike Indiana and Virginia, several other states do not include inheritances as gross income. Importantly, however, none of these other states has a statutory definition of gross income that includes "gifts." To the contrary, some even have statutes that explicitly exclude gifts and inheritances from gross income. See Humphreys v. DeRoss, 567 Pa. 614, 790 A.2d 281, 287 (2002) (emphasizing that, unlike Virginia, Pennsylvania statute "does not include `gifts' in the definition of income"); Cody v. Evans-Cody, 291 A.D.2d 27, 29, 735 N.Y.S.2d 181 (2001) (saying that "gifts and inheritances" explicitly are not income under Domestic Relations Law § 240(1-b)(e)(4)); Kern v. Castle, 75 Cal.App.4th 1442, 1453, 89 Cal.Rptr.2d 874 (1999) (declining to characterize inheritances as gross income after noting that "gifts" are not mentioned in California's child support guidelines); Connell v. Connell, 313 N.J.Super. 426, 712 A.2d 1266 (Ct.App.Div.1998) (declining to characterize inheritances as gross income under a child support guideline that does not include "gifts" as income); Gainey v. Gainey, 89 Wash.App. 269, 948 P.2d 865, 869 (1997) (holding that the corpus of an inheritance is not included in gross income because, under Washington's child support statute, "`gross monthly income' does not include gifts"); Nass v. Seaton, 904 P.2d 412, 415 (Alaska 1995) (Alaska statute explicitly provides that "[t]he principal amount of one-time gifts and inheritance[s] should not be considered as income."). Given that none of these states defines "gross income" to include "gifts," it comes as no surprise that their courts have interpreted their child support guidelines to exclude inheritances from gross income.
Colorado's statute is clearly distinguishable from statutes that either do not include or that explicitly exclude "gifts." Like Indiana and Virginia, Colorado has a statutory definition of gross income that expressly includes giftsspecifically, "monetary gifts." In short, because monetary inheritances are in fact "monetary gifts" under the meaning of section 14-10-115(7)(a)(I)(A), and are neither future nor speculative events, we reverse the court of appeals and hold that a monetary inheritance may be included in gross income for purposes of calculating child support.

2. Expended Amount of the Inheritance As Gross Income
Having decided that the statutory definition of gross income includes monetary inheritances, we now examine whether all or only a portion of the principal should be included in gross income.
Colorado's statutory guidelines establish a "rebuttable presumption" of child support payments. Although the statute broadly defines "gross income" to include both parents' total earnings, it expressly empowers the trial court to deviate from the guidelines when their application "would be inequitable, unjust, or inappropriate." § 14-10-115(3)(a), 5 C.R.S. (2002). Consequently, the trial court has discretion to increase or reduce the gross income based on the facts of a case.
Other states with similar guidelines have held that courts should only include a portion of the inheritance in gross income. To determine how much to include, these courts must conduct a fact specific analysis. In Indiana, for example, trial courts consider the "nature and use" of the inheritance. There, the courts weigh factors such as whether the inheritance is cash or securities (there is no "monetary" requirement in Indiana), whether the inheritance affects the "financial circumstances" of the parent, whether the inheritance *746 will benefit the child, and finally, whether the parent invests the inheritance for a future use. Gardner, 743 N.E.2d at 358-59. Likewise, in Virginia, the trial courts must consider other factors, which include, but are not limited to: "whether the financial resources were used to reduce marital debt, enhance the marital estate or benefit any child; whether the asset is received with regularity; whether the asset is liquid; and whether the asset or property is income-producing." Goldhamer, 525 S.E.2d at 603-04. These states recognize that the very nature of an inheritance may warrant a deviation from the basic child support guidelines, because first, people can inherit almost anything,[7] and second, the recipient can use the inheritance in an infinite number of ways.
We agree that courts should examine the nature and use of an inheritance when deciding how much of the principal to include in gross income. Specifically, the trial court must apply a two-part test. First, a court must decide whether an inheritance is monetary. If so, the inheritance is includable in gross income. If not, it does not fit the statutory definition of "monetary gift" and this ends the analysis. The term "monetary" refers to cash or "[a]ssets that can be easily converted to cash," e.g., money markets, mutual funds, stocks, and bonds. Black's Law Dictionary 1021 (7th ed.1999) (defining money). Other statutes support this definition. For instance, section 39-22-524(9)(b), 11 C.R.S (2002) defines monetary to include "cash, stocks, or bonds." Likewise, 18 U.S.C. § 1956(c)(5) (2002) includes "investment securities" or "negotiable instruments" in the definition of "monetary instruments."
If the court finds that an inheritance is monetary, it must next examine the recipient's use of the money. If the recipient uses the principal as a source of income either to meet existing living expenses or to increase the recipient's standard of living, the expended principal should be included in that year's gross income. If the monetary inheritance is saved or invested, such reserved principal is not included in gross income. As we discuss below, the interest generated by the principal is properly considered income.
The two-part test is fact-specific and will require a case-by-case evaluation on the part of the trial court to decide whether and to what extent the principal of the inheritance is included in the beneficiary's gross income for each year.

3. Interest As Gross Income
Having decided that the portion of a monetary inheritance that the beneficiary spends is gross income, we now turn to the question of how much interest should be included in the recipient's gross income.
Because interest is explicitly listed in section 14-10-115(7)(a)(I)(A), it is undisputed that the actual interest income generated from the net value of the inheritance is included as gross income. See In re Marriage of Tessmer, 903 P.2d 1194 (Colo.App.1995) (holding that earned interest is gross income for child support purposes even if not actually withdrawn or realized); In re Marriage of Armstrong, 831 P.2d 501, 502 (Colo.App.1992) (holding that income reasonably expected to be generated by an inheritance is gross income for child support purposes). In addition to actual interest, the trial court may be required to impute interest if the principal is not adequately invested to earn a reasonable rate of return.

4. The Inheritance in This Case
Upon remand, the trial court should apply the two-part test set forth above. There is no dispute that the inheritance in this case was monetary. With respect to the second part of the test, however, the trial court erred in holding that the $47,379 of the inherited IRA was gross income. Instead, as we have explained above, the father's 1999 gross income should include only the amount of principal he spent to maintain or improve his living conditions.
We also remand the issue of how much interest to include in gross income. The trial court erred in basing imputed interest on the *747 $47,379 in the IRA. Upon remand, the trial court should include the actual income earned on the father's trust account in his 1999 gross income so long as the funds are adequately invested to yield a reasonable rate of return. If the trial court decides to impute interest instead, the amount should be based on the father's total monetary assets for that year, not just the value of the IRA.
As the trial court recognized, the father's income for child support purposes is likely to fluctuate from year to year. For that reason, the court required the father to provide annual financial records to the mother. We agree with that order and direct the trial court to make future child support calculations consistent with the principles discussed in this opinion.

IV. Conclusion
In sum, we reverse the court of appeals, and remand to the trial court to recompute the father's gross income and child support payments in a method not inconsistent with the holding herein.
Justice KOURLIS dissents, and Justice COATS joins in the dissent.
Justice KOURLIS dissenting.
Because John M. Davidson's inheritance was not a regular occurrence that was likely to be repeated under the holding of this court in In re the Marriage of Nimmo, 891 P.2d 1002 (Colo.1995), I do not believe it should be included in his gross income for purposes of calculating child support. Rather, I suggest that Nimmo dictates that the child support calculation should include only the reasonable income from that principal amount in Davidson's gross income, because Davidson regularly and predictably receives that interest. Therefore, I respectfully dissent and would affirm the court of appeals.

I. Facts
As the Majority notes, Davidson and Suzan Casteel cohabited for twelve years, during which time their daughter A.M.D. was born. The court initially ordered Davidson to pay child support of $32.00 per month, based upon minimum wage income attributed to Davidson. He had suffered a back injury some years previously, which left him without full-time employment.
In December of 1998, Davidson received his inheritance upon the death of his mother. The total amount of the inheritance was $149,298, distributed in four installments: $50,000 cash in April of 1999; an Individual Retirement Account (IRA) containing $47,298 also in April 1999; $27,000 cash in July 1999; and $25,000 cash in August 1999. The inheritance was invested, as it became available, in a trust account at the First Bank of Hutchinson in Kansas.
Davidson reported as income the portion of the inheritance that comprised the IRA, and paid taxes of $9,358 federal and $1,910 state in March of 2000. The actual amount that Davidson withdrew from the trust account in 1999 was $33,298. The trustee distributed those funds upon Davidson's request.
At a hearing on October 15, 1999, the trial court modified Davidson's parenting time, thus implicating a different child support calculation. Casteel pursued discovery of financial information from Davidson and the court held a final hearing on Respondent's Motion to Reconsider Order of October 15, 1999, and Petitioner's reserved child support issue on June 21 and 30, 2000. The trial court entered an order at that time, finding that Davidson's gross income for child support purposes for 1999 included: 1) the amount of $47,298, the IRA amount that was included in the 1999 return as income; 2) the amount of $218, as interest on the remaining inheritance per month; and 3) the amount of $893 as minimum wages imputed to him. The trial court included the total amount as yearly, not monthly, income. The court further determined that the method of calculation would remain the same in future years, such that his income would include the gross amount withdrawn from the trust, plus monthly income as interest on principal of $218 per month, plus the minimum wage attribution.
Davidson appealed to the court of appeals, arguing primarily that the trial court erred in the amounts it included as gross income *748 from the trust, and also arguing that if any such amounts were to be included: 1) they should relate only to a specific monthnot the entire year; 2) they should be computed after tax and other expenses; and 3) they should then be deducted from the principal for purposes of computing interest income thereafter.
The court of appeals agreed in part, holding that the trial court erred in including distributions from Davidson's inheritance as gross income for purposes of the child support calculation. Rather, the court concluded that only a reasonable investment return on the corpus of the inheritance should properly be included, thereby encouraging Davidson to maintain the corpus of the trust through the period of child support obligation, and deplete it only when that obligation expired. In re A.M.D., 56 P.3d 1184, 1187 (Colo.App.2002). The court did note that, should the interest income be insufficient to provide the necessary child support, the trial court could deviate from the guidelines and require some portion of the corpus to be expended for child support purposes.
Casteel sought certiorari, and we accepted the issue of whether an inheritance should be included as gross income in determining a parent's child support obligation. Davidson did not file a brief in this court. We solicited amici filings in order to address that omission, but no such filings were forthcoming.
II. The Corpus of an Inheritance Should Not Be Included as Gross Income
In a proceeding for establishment of child support, the court may enter an order requiring either or both parties "to pay an amount reasonable or necessary for the child's support." § 14-10-115(1), 5 C.R.S. (2002). There are rebuttable presumption guidelines in the statute for the establishment of such child support amount, based upon the parties' individual and combined gross income. "Gross income" is defined in section 14-10-115(7) expansively to include income from any source, with some specific, but not exclusive, categories that identify monetary gifts without mentioning inheritances. "Gross income" does not include public assistance benefits, § 14-10-115(7)(a)(I)(B), 5 C.R.S. (2002), overtime pay over forty (40) hours a week, § 14-10-115(7)(a)(I)(C), and some other items such as the ordinary and necessary expenses required to produce income from self-employment, § 14-10-115(7)(a)(II).
Clearly, our General Assembly has imposed, and the courts have enforced, parents' duty to support their children to the best of their ability, and has defined gross income broadly for that purpose. In re Marriage of Bregar, 952 P.2d 783, 785 (Colo.App.1997). Additionally, children should share in the good fortune of their parents. In re Marriage of Nimmo, 891 P.2d 1002, 1007 (Colo.1995).
However, the approach outlined by the Majority both anticipates an automatic adjustment for the years 2000 and thereafter, for which the statute has no provision, and also may create an artificial standard of living for the child for a limited period of time.
More to the point, we are bound by our own precedent. We have previously stated that a gift should be included in gross income for purposes of child support calculations only when that gift is regularly received from a dependable source. Nimmo, 891 P.2d at 1007. In Nimmo, the question was whether the father was entitled to discover the amounts paid by and for the mother by her new spouse. We held that he was entitled to discover the amounts of gifts received by the mother from her new spouse, but we cautioned that they would be includable in her income only to the extent that they were regularly received and not speculative.[8]
The court of appeals concluded that Nimmo was dispositive of the issue presented in this case, and I agree. We have recently observed that one of the purposes of the child support guidelines is to establish an adequate standard of support for children, subject to the ability of parents to pay. It is *749 counterproductive to "set child support at unattainable or unrealistic levels for a parent who intends to pay but can never achieve the ordered amount." People in the interest of J.R.T. v. Martinez, 70 P.3d 474, 479 (Colo.2003). Using an inheritance as the basis for setting a child support amount necessarily results in an obligation based upon an expectancy that will never again materialize.
Instead, an inheritance should be treated as a "substantial and continuing" changed circumstance under section 14-10-122(1)(a), which can be a basis for deviating from the child support guidelines, and as an asset which will produce income on a regular basis. See In re Marriage of Bregar, 952 P.2d 783, 786-87 (Colo.App.1997).
The Majority looks to section 14-10-115(7)(I)(A) for direction as to the Colorado General Assembly's intent with respect to including inheritance money in the gross income determination. That portion of the statute dictates that "monetary gifts" shall be included as gross income for child support purposes, and the Majority understandably concludes that an inheritance is a monetary gift. However, in Nimmo, we previously refined that term when applied to child support calculations to include only gifts that are regularly received from a dependable source, and we are bound by that construction absent some legislative decision to the contrary.
The legislative history of section 14-10-115(7)(I)(A), however, suggests a tacit approval of the approach taken in Nimmo. Before it was amended in 1996, section 14-10-115(7)(a)(I)(A) required "gifts" to be included in the gross income calculation. In 1996, Senator Wells of the Colorado General Assembly introduced a bill to amend several sections of our child support statutes. Ch. 130, sec. 1, et seq., 1996 Colo. Sess. Laws. 590, 590-628; Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statement of Sen. Wells). One of those amendments, Section 1 of the bill, included a redefinition of "earnings" found in the garnishment and levy portions of the Colorado Revised Statutes. Ch. 130, sec. 1, § 13-54-104, 1996 Colo. Sess. Laws 590, 590-91. In January 1996, Senator Wells explained to the Senate Judiciary Committee that the amendment was intended to clarify the term "earnings" for purposes of both enforcing child support orders and calculating gross income. Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statement of Sen. Wells).
Senator Wells' version of the bill, however, did not attempt to redefine or modify the term "gifts." Rather, the bill was amended to clarify that "gifts" and "prizes" are to be read as "monetary gifts" and "monetary prizes" only at the request of committee member Senator Mutzebaugh who emphasized that "gifts" should never be understood to include physical as opposed to monetary gifts. Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statement of Sen. Wells); Staff Summary of Judiciary Committee Meeting, S. 96-2, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31 1996) at 4. Senator Mutzebaugh explained that it would be impossible to garnish a car but would obviously be possible to garnish cash. Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statements of Sen. Mutzebaugh). Senator Wells and the committee assented to this minor clarification and thus amended the entire bill to include "monetary gifts" and "monetary prizes" wherever similar language appeared. Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statement of Sen. Wells); Staff Summary of Judiciary Committee Meeting, S. 96-2, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31 1996) at 4. Thus, the term "gifts" in Section 7 of the bill, which redefined "income" in section 41-10-115(7)(I)(A), was also changed to read "monetary gifts." Scant discussion accompanied the "gifts" amendment of Section 7, however.
This amendment came nearly a year after our decision in Nimmo and the Senate made no mention of the case in amending the child support statutes. Senator Wells did point out that the proposed changes to section 14-10-115(7)(a)(I)(C) would clarify that, for calculation purposes of child support, "gross *750 income" should not include irregular overtime earnings or income from multiple jobs that bring hours worked in a week to more than forty. Hearings on S. 96-2 Before the Senate Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Jan. 31, 1996) (statement of Sen. Wells). He indicated his desire to preserve incentive for individuals to work overtime and to work at multiple jobs, thus limiting child support to the amounts that could be relied upon. Id.
The House Judiciary Committee expressly considered Nimmo. There, a representative of the Division of Child Support Enforcement of the Colorado Department of Human Services summarized the bill for the committee. Hearings on S. 96-2 Before the House Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Mar. 12, 1996) (statement of Andrea Baugher). In response to a question from the committee, she stated that the income of a step-parent should never be imputed to a custodial spouse for purposes of calculating "gross income." Nick Nimmo, a party in the Nimmo case, also testified at the hearing and asked the committee to adopt an amendment defining "income" to include the income of a step-parent where the custodial ex-spouse is voluntarily unemployed. Hearings on S. 96-2 Before the House Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Mar. 12, 1996) (statement of Nick Nimmo). Representative McPherson proposed an amendment along these lines, but the committee rejected it. Hearings on S. 96-2 Before the House Judiciary Committee, 60th Gen. Assembly, 2nd Reg. Sess. (Mar. 12, 1996); Staff Summary of Judiciary Committee Meeting, S. 96-2, 60th Gen. Assembly, 2nd Reg. Sess. (Mar. 12, 1996) at 2. Importantly, although the committee clearly dealt with the ramifications of Nimmo, they made no effort to overrule it or change the statutory definition of gifts in response to the case. The House committee did not address at all the Senate's amendment changing "gifts" to "monetary gifts."
The General Assembly is presumed to be aware of and accept case law interpretations of statutes, particularly in circumstances in which an amendment follows publication of the case. See Vaughan v. McMinn, 945 P.2d 404, 409 (Colo.1997) ("The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area."). While the legislature did modify the statutory term at issue in this case, the modification it made was minor and made only to clarify a particular term. In no way did it affect the substance of our decision in Nimmo, as demonstrated by the legislative history surrounding the alteration of the term "gift." Corsentino v. Cordova, 4 P.3d 1082, 1091 (Colo.2000) ("[I]f an amendment clarifies that law, the law remains unchanged by the amendment."); see also Weld County Sch. Dist. v. Bymer, 955 P.2d 550, 554 (Colo.1998) (holding that in addition to sub silentio adoption of a court's interpretation, "[a]nother important source of legislative intent is the context in which the legislation was adopted"). Because the General Assembly underwent a major transformation of the child support statutes without substantively altering the term "gift" or indicating in any other way that our decision in Nimmo was incorrect, we presume that our interpretation of "gifts" in Nimmo has been affirmed. See People v. Swain, 959 P.2d 426, 430-31 (Colo.1998).

III. Conclusion
I agree with the court of appeals' conclusion that our Nimmo case limits inclusion of the inheritance in gross income to sums that are regularly received by the obligor. Accordingly, like the court of appeals, I, too, would remand to the trial court for recalculation of child support based upon income from the principal but not the principal itself.
I am authorized to state that JUSTICE COATS joins in this dissent.
NOTES
[1] This trust account is a managed investment account. An investment manager acts as a trustee and invests the money on behalf of the father. For this service, the trustee charges an annual percentage of the assets.
[2] The Internal Revenue Service requires an heir to report an IRA as his own income because, by definition, the decedent never paid income tax on the funds comprising the IRA. I.R.C. § 408(d)(3)(C)(ii) (2003); see Rev. Rul. 92-47, 1992-1 C.B. 198. See also generally Gayle Stutzman Evans, Basic Estate and Gift Taxation and Planning: Estate Planning with Qualified Plans and IRAs (American Law Institute ed.2003).
[3] The record and trial court findings clearly establish that in 1999, the father actually withdrew only $33,298, not the entire $47,379 value of the IRA. See R. vol. 2 at 428; Order at 2 ¶ 5. The court of appeals incorrectly characterized the father's $33,298 withdrawal as the net amount received by the father after withdrawing the entire IRA and paying the requisite taxes. See In re A.M.D., 56 P.3d at 1185.
[4] There is a discrepancy between the father's investment account statement and the father's 1999 tax return. The investment account statement says that he received $47,298 from his mother's IRA on April 20, 1999, but the father's income tax return reports $47,379 in IRA income-a difference of $81.
[5] In 1996, the legislature acted in light of In re Marriage of McCord, 910 P.2d 85 (Colo.App.1995) (holding that lottery winnings constituted a prize and should be included in gross income). It ratified that decision. Specifically, the 1996 legislation included monetary prizes in gross income and excluded only "lottery winnings not required by the rules of the Colorado lottery commission to be paid at the lottery office." Ch. 130, sec. 7, § 14-10-115(7)(a)(I)(A), 1996 Colo. Sess. Laws 590, 595. This means that any prize of $600 or over is included as gross income, but smaller lottery winnings are not. See Rules 54.1(a) & (b), 1 C.C.R. 206-1 (2003).
[6] At the time Nimmo was decided, the statutory definition of "gross income" referred generally to "gifts" rather than specifically to "monetary gifts." Id. at 1005.
[7] Although we limit our inquiry to "monetary" inheritances, even monetary assets may be passed along by way of a trust, and the recipient may not have access to the funds for many years, or may only have access for restricted purposes or amounts.
[8] In that case, only the dissent suggested that a "gift" should encompass a single transaction as well as a regular occurrence.